THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. R.C., a Minor, Respondent-Appellant.

First District (3rd Division)    No. 86—1773

Opinion filed September 21, 1988.

Legal Advocacy Service, of Chicago (Sandra Kopels and Sharon Rudy, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Steven J. Zick, John A. Gasiorowski, and Michael D. Boyce, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

R.C. appeals from a judgment of the circuit court of Cook County adjudging R.C. a minor and finding that he should remain involuntarily hospitalized in Chicago Lakeshore Hospital. On appeal, R.C. argues that (1) he was denied his statutory rights and due process of law when he was admitted to the hospital without first being examined regarding his need for hospitalization and (2) the trial court erred in allowing his parents and the hospital to be represented by a private attorney at the trial. We affirm.

On May 27, 1986, a trial was conducted to determine whether R.C. should remain involuntarily hospitalized in a mental hospital, Chicago Lakeshore Hospital. At trial, R.C.'s parents testified con-

cerning his extensive history of behavioral problems dating back to when R.C. was in the second grade. R.C. was unable to complete his schoolwork and created classroom disturbances to the point where he was eventually placed into a special education classroom. R.C. stayed in special education classrooms from the third through the sixth grade. During this time, R.C. was in constant therapy with various psychologists and psychiatrists. In the sixth grade, R.C.'s behavior improved and he attended both special education classes and regular classes.

While attending both classes, however, R.C.'s behavior began to degenerate. R.C. would not attend classes, would run from his parents, start fires and disrupt his classes. When he was in the seventh grade, R.C. was hospitalized for four months in Sangamaw Children's Mental Hospital. Following his release, R.C. began attending regular school classes. While in the eighth grade, R.C.'s erratic behavior resurfaced. R.C. would fight in school, ask teachers for cigarettes, refuse to attend classes, and run away from his home.

When R.C. was 14, he was examined by a psychiatrist for the Committee for the Handicapped. This psychiatrist informed R.C.'s parents that if he was not placed residentially or long term, he would "be either dead or in jail" by the age of 18.

R.C.'s parents initiated a person in need of supervision (PINS) petition after R.C. was convicted as a juvenile for breaking into cars. R.C. was examined by the New York Court Supervision Unit and then placed in DeSisto School in Massachusetts.

R.C. attended DeSisto for almost two years. When R.C. returned home on vacation, he ran away from home for seven weeks. When R.C. returned, he sued his parents for neglect in the New York family court. R.C's parents initiated another PINS petition and R.C. was placed in a nonsecurity detention facility. R.C. was examined by the court consultation unit and a highly structured long-term residential facility was recommended. R.C. agreed to return to DeSisto School, but at the Florida campus. However, once there, R.C. ran away from the Florida campus and returned to New York.

Following R.C.'s disappearance, the DeSisto School's psychologist informed R.C.'s parents that hospitalization was recommended for R.C. Based upon this information and R.C.'s behavior, R.C.'s parents contacted the Chicago Lakeshore Hospital (Lakeshore). They spoke with Dr. Upeli, a member of the hospital staff. Dr. Upeli stated that he could not make any guarantees but he thought Lakeshore could help R.C. When R.C.'s parents attempted to bring R.C. to Chicago, he ran away. His parents had to hire three private detectives to

bring R.C. to Chicago peacefully.

Dr. Rivitz, a psychiatrist at Lakeshore, testified at the trial. Dr. Rivitz examined R.C. at least 12 times for approximately 45 minutes each time. In Dr. Rivitz' opinion, R.C. was "emotionally despaired of such severity" that hospitalization was required to prevent R.C. from placing himself in a dangerous position where he could be harmed.

Dr. Alpert, the examining clinical psychologist at Lakeshore, also testified. Dr. Alpert never talked with R.C.'s parents prior to R.C.'s arriving at Lakeshore. Dr. Alpert testified that he conducted an admission's examination for 45 minutes on May 2, 1986, and that R.C. was subsequently admitted to Lakeshore that same day. Dr. Alpert concurred with Dr. Rivitz' opinion that R.C. was emotionally disturbed to such severity that hospitalization was required.

Dr. Guidi, supervisor of psychology at the Illinois State Psychiatric Institute, testified on R.C.'s behalf. Dr. Guidi stated that based upon his examination of R.C., he "does not suffer from a mental illness or emotional disturbance of such severity that hospitalization is warranted." However, Dr Guidi agreed that if R.C.'s condition were to continue without correction, he would find himself in serious difficulty later in life.

R.C. testified on his own behalf. He stated that he did not "cut class," although school opened at 8:05 a.m. and he arrived there in the late afternoon. R.C. admitted to running away from school three times as well as running away when hearing that he was coming to Chicago.

Following the close of evidence, the trial court found that R.C. "is a minor who should remain hospitalized" in Lakeshore. This appeal followed.

R.C. first argues that he was denied his statutory rights and due process of law when he was admitted to the hospital without first being examined regarding his need for hospitalization. We disagree.

The statute involved herein states in part:

> "(a) Any minor may be admitted to a mental health facility for inpatient treatment upon application to the facility director of the facility, if the facility director finds that the minor has a mental illness or emotional disturbance of such severity that hospitalization is necessary and that the minor is likely to benefit from inpatient treatment. Except in cases of admission under Section 3—504, prior to admission, a psychiatrist or clinical psychologist who has personally examined the minor shall state in writing that the minor meets the standard for admission. The statement shall set forth in detail the reasons for

such conclusion and shall indicate what alternatives to hospitalization have been explored.

(b) The application may be executed by a parent or guardian ***." Ill. Rev. Stat. 1985, ch. 91½, par. 3—503.

■■ ■ It is clear that for a person to be subject to involuntary admission, it must be established by clear and convincing evidence that the person is a definite danger to himself or to society. (*In re Williams* (1987), 151 Ill. App. 3d 911, 919, 503 N.E.2d 816, 821.) Recognizing that involuntary commitment proceedings affect important liberty interests, strict compliance with the statutory procedures is compelling. (*In re Macedo* (1986), 150 Ill. App. 3d 673, 675, 502 N.E.2d 72, 73.) However, "the medical science of predicting the future is inexact, so that a reviewing court would normally uphold a commitment order where there is a reasonable expectation that the respondent might engage in dangerous conduct." (*In re Williams* (1987), 151 Ill. App. 3d 911, 920, 503 N.E.2d 816, 822.) Thus, on appeal a trial court's determination that the applicable statutes have been complied with and that a person is subject to involuntary admission will not be disturbed unless that determination is manifestly erroneous.

■ In the instant case, it is obvious from the evidence adduced at trial that R.C. is not only a danger to himself but to society as well. Moreover, it is clear that R.C. does not contest the fact that his parents have a right under the applicable statute to have him hospitalized. R.C. claims, however, that he was admitted *prior* to an examination in violation of the statute. We do not agree with this contention. It is not only ill-founded and illogical but it is unsupported by the record. The record indicates that when R.C. arrived at the hospital, he was voluntarily admitted for inpatient treatment upon application of his parents. R.C. then, exercising his rights under the statute, signed a release. R.C. then received a certification examination by Dr. Ravitz and Dr. Alpert. Shortly thereafter R.C. was involuntarily admitted.

We are in accord with the trial court's position that "it's a question of semantics what 'admitting' means." Absent a specific legislative definition of when a patient is "admitted," we believe that a reasonable interpretation of the statutory language "prior to admission" allows for a potential patient to be taken to a hospital and within a reasonable amount of time thereafter be examined and processed to determine whether that person should be formally admitted.

We therefore conclude, as the trial court correctly did, that R.C. was not admitted to the hospital until after he was examined and a determination was made that he had an "emotional disturbance of

such severity that hospitalization" was necessary. Accordingly, R.C.'s contention that he was admitted without an examination is erroneous and must therefore fail.

■ R.C. next argues that the trial court erred in allowing his parents to be represented by a private attorney at the trial. We find this argument without merit.

At trial, the State's Attorney represented the People of the State of Illinois. However, R.C.'s parents and Lakeshore were represented by private counsel. R.C. objected to his parents' use of private counsel on the grounds that mental health proceedings are quasi-criminal in that no plaintiff or defendant exists *per se.* According to R.C., the two parties involved are the People of the State of Illinois and the respondent. Thus, although other people such as family members and physicians have an interest in the proceedings, they are not parties under the provisions of the Mental Health and Developmental Disabilities Code (Mental Health Code or Code) (Ill. Rev. Stat. 1985, ch. 91½, par. 1—100 *et seq.*). Based upon our reading of the Mental Health Code, we find this argument without merit.

Section 3—101 provides:

> "The State's Attorneys of the several counties shall represent the people of the State of Illinois in court proceedings under this Chapter in their respective counties, shall attend such proceedings either in person or by assistant, and shall ensure that petitions, reports and orders are properly prepared. *Nothing herein contained shall prevent any party from being represented by his own counsel.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 91½, par. 3—101.)

Section 3—509 provides:

> "Upon receipt of a petition *** the court shall appoint counsel or the minor and shall set a hearing to be held within 5 days ***. The court shall direct that notice of the time and place of the hearing be served upon the minor, his attorney, the person who executed the application, the objector, and the facility director." Ill. Rev. Stat. 1985, ch. 91½, par. 3—509.

In light of the fact that the Code provides for notification of a hearing to the admitting party, objecting party and hospital staff, we cannot find as R.C. urges that they are not "parties" to the proceeding. The Code clearly recognizes "the person who executed the application, the objector, and the facility director" as parties to a hearing involving the Code. In the absence of any legislative direction to the contrary, we are bound to find that R.C.'s parents and Lakeshore are parties to the proceeding and that under the provisions of section 3—

101 (Ill. Rev. Stat. 1985, ch. 91½, par. 3—101), the trial court did not err in allowing participation of private counsel.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

WHITE, P.J., and McNAMARA, J., concur.