*In re* DAN DEVINE, a Person Found Subject to Involuntary Commitment (The People of the State of Illinois, Petitioner-Appellee, v. Dan Devine, Respondent-Appellant).

Second District   No. 2—90—0656

Opinion filed May 24, 1991.—Rehearing denied June 27, 1991.

Guardianship & Advocacy Commission, of Elgin (William E. Coffin, of counsel), for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Respondent, Dan Devine, appeals from an order of the circuit court of Kane County which involuntarily committed him to the Department of Mental Health and Developmental Disabilities (Department). Respondent contends that the order must be reversed because the statutory provisions for involuntary commitment proceedings were not strictly followed. He also requests that the commitment order be expunged from court records.

Respondent, who was initially admitted to Elgin Mental Health Center (Center) as a voluntary patient, was readmitted on an involuntary basis after a petition and certificate were filed with the court pursuant to section 3—403 of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1989, ch. 91½, par. 3—403). As required by the Code, the matter was set for hearing and respondent was given notice of the time and place of the hearing. (Ill. Rev. Stat. 1989, ch. 91½, pars. 3—403, 3—901.) The record shows that notice was prepared and served by an employee of the medical records department at the Center.

At the conclusion of the hearing the court found that respondent was a person subject to involuntary admission and ordered him to be hospitalized with the Department. Respondent challenges the trial court order on the ground that it was void for want of subject-matter jurisdiction. Specifically, respondent claims he was not given proper notice of his commitment hearing and that the trial court order did not reflect compliance with the Code requirements that the treatment ordered should be the least restrictive appropriate alternative and be for a specified period of time. Respondent did not previously raise these objections even though he appeared at the hearing and was represented by counsel.

We will address, as a preliminary matter, respondent's assertion that the trial court lacked subject-matter jurisdiction and, therefore, could not enter a valid order of commitment. Subject-matter jurisdiction is the power of the particular court to hear the general type of case that is before it (*People ex rel. Scott v. Janson* (1974), 57 Ill. 2d 451, 459; *In re Wheeler* (1987), 152 Ill. App. 3d 371, 373; *Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 67; *Lemons v. Lemons* (1978), 57 Ill. App. 3d 473, 476) and is not dependent on the sufficiency of the pleadings or the correctness of the trial court's decision (*Janson*, 57 Ill. 2d at 459; *Lemons*, 57 Ill. App. 3d at 476) or the regularity of the proceedings (*Wheeler*, 152 Ill. App. 3d at 373; *Lemons*, 57 Ill. App. 3d at 476). We are unable to perceive any lack of power

for the court below to hear this case. Pursuant to section 3—100 of the Code (Ill. Rev. Stat. 1989, ch. 91½, par. 3—100), the circuit court has jurisdiction over persons not charged with a felony who are subject to involuntary admission to a mental health facility. It is the statute which empowered the court to enter an order for respondent's involuntary commitment. That power was not mitigated by faulty notice or any error in the court's order itself. In *Wheeler* (*In re Wheeler* (1987), 152 Ill. App. 3d 371), the respondent argued that the court lacked subject-matter jurisdiction because the certificate filed with the petition did not meet the statutory requirements. We applied the rules set forth above and found that any deficiencies in the petition or certificates could not affect the court's power to enter an order of commitment. We are not persuaded by respondent's argument that flawed compliance with the Code provision for notice, or an error, if any, in the order of the court deprived the court of its power to hear the petition seeking respondent's involuntary commitment.

■ We turn now to the question of whether the notice given to respondent was so insufficient that the trial court order must be reversed. Respondent initially argues that he was not served with any notice at all because the signature on the return of service was not notarized, and the return, therefore, provides no proof that the purported signer either actually signed or signed under oath. There is no substance to this argument. The Code itself provides:

> "Every petition, certificate and proof of service required by this Chapter shall be executed under penalty of perjury as though under oath or affirmation, but no acknowledgement is required." (Ill. Rev. Stat. 1989, ch. 91½, par. 3—203.)

The absence of notarization does not affect the validity of service.

Respondent next proposes that notice was insufficient because it was given pursuant to an invalid order of the court. On January 17, 1990, the chief judge of the Kane County circuit court entered general order 90—1 pertaining to mental health hearings. Section 6 of the order provides for service of notice of hearings to respondents residing in mental health facilities. The language of section 6 which is pertinent here makes the Department responsible for providing actual notice to such respondents. According to the record, notice was prepared and served on respondent by an Elgin Mental Health Center employee pursuant to general order 90—1. Respondent takes the position that this notice was not adequate to fulfill the Code requirements.

We note that respondent refers to section 3—706 of the Code as the provision which contains the notice requirements applicable to

him. However, respondent originally voluntarily entered the Center. The petition for involuntary commitment was a response to his written notice that he wished to be discharged. Section 3—403 controls this set of circumstances and provides that hearings on section 3—403 petitions are to be conducted pursuant to article IX of the Code (Ill. Rev. Stat. 1989, ch. 91½, par. 3—403). Section 3—901 of article IX pertains to hearings and, similar to the Code's other notice provisions, states that "[t]he court shall direct that notice of the time and place of the hearing be given to the patient" (Ill. Rev. Stat. 1989, ch. 91½, par. 3—901). Respondent urges that general order 90—1 was beyond the authority of the chief judge and, therefore, notice and service pursuant to the order were not adequate to fulfill the Code requirement that the "court shall direct" the giving of notice. The record persuades us that the propriety of general order 90—1 is not relevant to the issue raised by respondent.

Our supreme court recently construed the notice provision of section 3—706 of the Code in order to determine whether strict compliance with the statutory notice requirements is necessary for a valid, involuntary admission order. (*In re Splett* (1991), 143 Ill. 2d 225.) Like section 3—901 in this case, section 3—706 states that "[t]he court shall direct" that notice be served on the respondent. (Ill. Rev. Stat. 1989, ch. 91½, par. 3—706.) While the record in *Splett* did not reflect that respondent had been served with formal notice of his admission hearing, respondent appeared with counsel at the hearing and made no objections to the sufficiency of notice. Nevertheless, in the absence of an affirmative showing that respondent had received formal notice, this court reversed the involuntary admission order on the ground that the State failed to comply with the notice requirements of section 3—706. See *In re Splett* (1990), 194 Ill. App. 3d 391.

On appeal, in its discussion of the notice issue in *Splett*, the supreme court opined that the absence of affirmative proof in the record that respondent received formal notice is not necessarily fatal to an involuntary admission order. According to the court, when it is evident that a respondent had actual notice, a commitment order based on clear and convincing evidence and issued after a hearing on the merits will be valid even when the record does not demonstrate that respondent received formal notice.

The *Splett* court focused on respondent's appearance at the hearing and his representation by counsel; counsel's answer of ready to proceed at trial, cross-examination of witnesses, and argument of the case; and respondent's failure to object to the sufficiency of notice, to request a continuance, or to assert that he was prejudiced by lack of

formal notice. On these facts the court found that the notice given to respondent and his attorney gave them time to prepare for the hearing and an opportunity to be heard on the disposition of the matter. The court concluded that the purposes of the notice provision of section 3—706 were fulfilled and any gap in the record relative to notice was harmless. The court refused to interpret the statute to require the doing of an empty formality when its purposes had otherwise been achieved. We find *Splett* dispositive of the notice issue now before us.

■■ While notice here was required by section 3—901, rather than by section 3—706 as in *Splett*, notice was given for the same reason in both instances, *i.e.*, a hearing on a petition for the involuntary admission of respondent to a mental health facility. Accordingly, the analysis employed by the *Splett* court is applicable here. This case differs from *Splett*, also, in that it is clear from the record that respondent was actually served with notice of his hearing. Notice is challenged only because, according to respondent, it did not comply exactly with the charge of section 3—901 that the court should direct that notice be given. However, the facts pertinent to notice in this case closely echo the *Splett* facts. Respondent appeared at his hearing and was represented by counsel. No objection was made that notice was insufficient. On the contrary, counsel answered in the negative when specifically asked by the court if there was any issue in regard to notice and service. Also, counsel did not request a continuance. In fact, when the court also asked if she had had an adequate opportunity to prepare, counsel responded that she had. Counsel cross-examined the State's witness and conducted a direct examination of respondent. Finally, respondent makes no claim of prejudice to himself as a result of allegedly flawed notice, and we can find nothing in the record to indicate that his rights were abused. The circumstances of this case demand the same result as that reached by the supreme court in *Splett*.

Respondent here, like the respondent in *Splett*, received sufficient notice to assure that the purposes of section 3—901 were satisfied. The record unquestionably demonstrates that respondent and his counsel had adequate time to prepare for respondent's hearing and were given full opportunity to be heard as to the disposition of the petition for respondent's involuntary admission. Since the legislative intent of section 3—901 was achieved, under *Splett* we need not insist on "the performance of an empty formality." (*Splett*, 143 Ill. 2d at 232.) Defects in notice to respondent, if any, were harmless.

■ We will touch briefly on respondent's further claim that the order committing him to the Department must be overturned because it neither specified a determinate period of hospitalization nor set out the least restrictive alternative treatment. Section 3—813 of the Code (Ill. Rev. Stat. 1989, ch. 91½, par. 3—813) directs that an initial order for treatment "shall be for a period not to exceed 60 days." Section 3—811 of the Code (Ill. Rev. Stat. 1989, ch. 91½, par. 3—811) directs the court to order "the least restrictive alternative for treatment which is appropriate." It is not disputed that the order here does not specifically and directly address either of these factors. The absence of a time period, however, does not affect the validity of the order because the statute itself sets a determinate period of 60 days for initial hospitalizations.

Respondent refers to the intent of the drafters of the Code to eliminate orders for indeterminate periods of treatment. The drafters themselves accomplished this goal by building determinate periods right into the Code. At the end of the first 60 days the patient must be discharged unless a new petition is filed. Subsequent hospitalizations are limited to 60 or 180 days. We note that the back of the order contains a "Notice To Persons Receiving This Order" which sets forth these statutory periods. We observe, too, that, while the court certainly could order a treatment period of less than 60 days, the Code does not require the court order to state an amount of time other than what is specified within the Code itself. Moreover, respondent does not argue that in his particular case a treatment period of less than 60 days should have been specified. On these facts we find that the order here complied with the statutory requirements relative to the duration of a period of treatment. See *In re Grimes* (1990), 193 Ill. App. 3d 119, 123.

■ The failure of the notice to refer to the restrictiveness of the treatment is not fatal, either. The statute directs the court to order the least restrictive alternative treatment. It does not say the court must make a finding that the treatment it is ordering is the least restrictive alternative. The record here plainly shows that the State's primary witness responded affirmatively when asked if confinement in Elgin Mental Health Center was the "least restrictive environment" for respondent. In our view the trial court accurately followed the Code directive.

In light of our resolution of the other issues presented by respondent, we need not address his request that the order for his involuntary admission be expunged.

8

For the reasons set forth above, the order of the circuit court of Kane County is affirmed.

Affirmed.

INGLIS and UNVERZAGT, JJ., concur.