*In re* JACQUELYN LONG, Found to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Jacquelyn Long, Respondent-Appellant).

Second District   No. 2—91—0215

Opinion filed August 27, 1992.

William E. Coffin, of Guardianship & Advocacy Commission, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Respondent, Jacquelyn Long, appeals from an order of the circuit court of Kane County which found that she was subject to involuntary admission to a mental health facility. On appeal, she contends that the trial court lacked subject-matter jurisdiction because

of noncompliance with certain provisions of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1991, ch. 91½, par. 1—100 et seq.). Respondent also argues that, even if the court had subject-matter jurisdiction, (1) the State's failure to comply with the Code requires that the judgment be reversed, and (2) the evidence at trial was insufficient to support the finding that she was subject to involuntary admission.

On November 29, 1990, the circuit court of Cook County determined that respondent was subject to involuntary admission and ordered that she be hospitalized at a facility operated by the Department of Mental Health and Developmental Disabilities (Department). This was the initial hospitalization order for respondent. At the time, the maximum duration of initial orders for hospitalization was 60 days (Ill. Rev. Stat. 1989, ch. 91½, par. 3—813(a)). Thus, the initial order authorized respondent's hospitalization until January 27, 1991.

Respondent was originally admitted to a facility in Chicago. After about a month, the Department transferred her to the Elgin Mental Health Center. On February 7, 1991, the Department filed a petition which it characterized as a petition for the emergency admission of respondent pursuant to section 3—600 of the Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—600). The petition was accompanied by two certificates dated February 6, 1991, and signed by psychiatrists. The certificates stated that the psychiatrists had examined respondent that day and believed that she was mentally ill and, as a result of her illness, was unable to provide for her basic physical needs so as to guard against serious harm to herself. A hearing was set on the petition for February 8, 1991. On February 7, 1991, officials of the Elgin Mental Health Center filled out papers discharging respondent, but respondent did not leave the Center. The discharge papers referred to the fact that a petition for readmission had been filed.

At the February 8, 1991, hearing, respondent's attorney made an oral motion to dismiss the petition on the basis that it was not timely. The attorney argued that, under section 3—813(a) of the Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—813(a)), petitions for continued hospitalization must be filed before the expiration of the initial order for hospitalization, or if this was a petition for emergency admission, the patient would have to have been discharged. The State argued that the petition was a valid initial petition for emergency admission. The trial judge denied the motion to dismiss.

The evidence at the hearing included testimony from a psychiatrist that respondent suffers from a bipolar disorder, a type of mental illness that is characterized by extreme changes of mood. As a result, she would sometimes become highly agitated and would sometimes be depressed. She had lost 33 pounds within a few months, would often refuse to eat, and would refuse to take certain medication. Her weight loss was due to her failure to accept medication. The medication acted as a tranquilizer to quiet respondent during periods of agitation. Otherwise, during such periods she would expend great energy thereby contributing to her weight loss problem. The psychiatrist believed that respondent was unable to take care of herself. He further testified that respondent often, as she did at the hearing, carried a cup of orange peels and she refused meals, saying that she had her own food. Respondent's caseworker, Christina Moore, also testified about incidents involving respondent's unusual behavior. One such incident involved respondent calling Governor Thompson's office and informing them that she was the Governor's wife's sponsor for Alcoholics Anonymous.

The trial judge found that respondent was subject to involuntary admission and ordered that she be hospitalized. Respondent now appeals from that order.

Respondent first argues that the circuit court lacked subject-matter jurisdiction because the Department and the court failed to comply with the Code in the following respects: (1) although the Department gave written notice of the hearing to respondent, the notice was not given pursuant to valid court direction; (2) the Department failed to file a petition to continue her hospitalization prior to the expiration of her initial period of hospitalization, and it did not discharge her; (3) the judgment order does not reflect that the trial court ordered the least restrictive appropriate disposition; and (4) the judgment order does not specify the period of involuntary hospitalization.

■ As respondent points out, when a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction, which means that the court's power is limited by the language of the statute. (*DeKing v. Urban Investment & Development Co.* (1987), 155 Ill. App. 3d 594, 596-97.) Subject-matter jurisdiction is the power of a particular court to hear the general type of case that is before it. (*In re Devine* (1991), 214 Ill. App. 3d 1, 3.) Section 3-100 of the Code provides that circuit courts have jurisdiction over persons not charged with a felony who are subject to involuntary admission to a mental health facility. (Ill. Rev. Stat.

1991, ch. 91½, par. 3—100.) Under this statute, circuit courts are empowered to hear involuntary commitment cases, and this power is not affected by alleged deficiencies in the notice of the hearing given to respondent or the judgment order. (*Devine*, 214 Ill. App. 3d at 4.) Furthermore, subject-matter jurisdiction is not dependent on the sufficiency of the pleadings or the correctness of the trial court's decision. (*Devine*, 214 Ill. App. 3d at 3, citing *People ex rel. Scott v. Janson* (1974), 57 Ill. 2d 451, 459.) We therefore hold that the challenges raised by respondent do not affect the subject-matter jurisdiction of the court.

Respondent next contends that, even if the circuit court had subject-matter jurisdiction, its judgment must be reversed because of the aforementioned failures to comply with the requirements of the Code. The first alleged error is that notice was not given pursuant to valid court direction. The notice in this case was signed by someone from the medical records department of the Elgin Mental Health Center and was served on respondent on February 7, 1991.

■ Section 3—611 of the Code provides in part that, "The court shall direct that notice of the time and place of the hearing be served upon the respondent." (Ill. Rev. Stat. 1991, ch. 91½, par. 3—611.) Respondent contends that the notice was not court directed and, alternatively, even if it was court directed through a general order entered by the chief judge giving the facility authority to give notice, that general order was invalid. This issue has been raised and rejected by this court previously. (*In re Devine* (1991), 214 Ill. App. 3d 1, 5-6.) In that case, as here, respondent appeared at the hearing represented by counsel and specifically denied that notice and service were at issue. Also as in that case, respondent here does not make a claim of specific prejudice due to the alleged error. Counsel did not request a continuance and counsel adequately examined the witnesses. Relying on the Illinois Supreme Court case of *In re Splett* (1991), 143 Ill. 2d 225, this court held that the legislative intent of the notice requirement in section 3—901 was achieved and any defects were harmless. In this case, the notice requirement set forth in section 3—611 is at issue. Since it is similar to section 3—901 in all important respects, this distinction does not require a different result. Accordingly, notice was sufficient in this case, and any defects were harmless.

■ Respondent next urges this court to reverse the February 8, 1991, order of involuntary admission because the Department failed to comply with section 3—813(a) of the Code. Section 3—813(a) states in part:

"Prior to the expiration of the initial order [for hospitalization] if the facility director believes that the recipient continues to be subject to involuntary admission, a new petition and 2 new certificates may be filed with the court. *** If no petition is filed prior to the expiration of the original order, the patient shall be discharged." Ill. Rev. Stat. 1991, ch. 91½, par. 3—813(a).

Respondent contends that on January 27, 1991, the sixtieth day of commitment, the Department had a duty to discharge her since a petition for continued hospitalization had not been filed. She argues that, despite the fact that the second petition was purportedly for immediate hospitalization under section 3—600 of the Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—600), it was actually a petition for continued hospitalization under section 3—813. As such, it was not timely filed since it was not filed prior to the expiration of the initial order. Respondent further argues that while she was discharged on February 7, 1991, one day before the new petition for hospitalization occurred, the discharge was on paper only and she was not physically released. Therefore, she concludes that a petition for emergency hospitalization was not appropriate.

A number of cases have held that a petition for continued hospitalization must be filed before the expiration of the initial petition or it is untimely and invalid. (*In re Hatala* (1990), 200 Ill. App. 3d 163, 166; *In re Walker* (1990), 200 Ill. App. 3d 159, 162; *In re Bloyer* (1989), 185 Ill. App. 3d 245, 247; and *In re Vancil* (1989), 183 Ill. App. 3d 204, 205-06.) Those cases are, in our opinion, distinguishable. In this case, not only was the petition labelled, argued, and treated by the trial court as a new petition for respondent's immediate hospitalization pursuant to section 3—600 of the Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—600), but, more importantly, respondent had been discharged before the petition was filed, thereby making it clear that the petition was a new petition for emergency admission and not a petition to continue involuntary hospitalization.

In an analogous case, *People v. Read* (1992), 228 Ill. App. 3d 664, respondent was admitted for involuntary hospitalization pursuant to a petition for judicial admission. (Ill. Rev. Stat. 1989, ch. 91½, par. 4—400 *et seq.*) The initial petition was dismissed because respondent was not examined by a clinical psychologist or physician within 24 hours pending admission as required by the Code. (Ill. Rev. Stat. 1989, ch. 91½, par. 4—402.) Later that day, a second petition was filed. Respondent was discharged on paper, but never physically left the mental health facility. In holding the second peti-

tion was valid, the court stated that physical discharge was not necessary to comply with the statutory definition of discharge. See Ill. Rev. Stat. 1989, ch. 91½, par. 1—109; *Read*, 228 Ill. App. 3d at 667.

Just as in *Read*, here the second petition was timely filed as it was not a petition for continued treatment. Even if the facility's failure to release respondent on January 27, 1991, was error, that failure to discharge does not invalidate an otherwise valid subsequent proceeding such as the one here. *Read*, 228 Ill. App. 3d at 668; *In re Shaw* (1987), 153 Ill. App. 3d 939, 945; see also *In re Clark* (1991), 220 Ill. App. 3d 1024, 1028 (wherein the court held that an improper second petition for admission should have no bearing on a proper third petition).

■ Respondent next argues that the judgment order does not reflect that the trial court ordered the least restrictive appropriate disposition as required by section 3—811 of the Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—811) and the trial court failed to specify a determinate period of involuntary hospitalization as required by section 3—813 of the Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—813).

Similar arguments were considered and rejected by this court in the case of *In re Devine* (1991), 214 Ill. App. 3d 1, 7. In that case, respondent argued that the order committing him to the Department must be overturned because it did not specify a determinate period of hospitalization and because it did not set out the least restrictive alternative treatment. The court held that the failure of the order to set a time period and to refer to the restrictiveness of the treatment was not fatal. According to the court, the absence of a time period does not affect the validity of the order because the statute itself sets a determinate period of time for initial hospitalizations. Further, the statute directs the court to order the least restrictive alternative treatment, but does not order the court to make a specific showing of doing so.

We conclude that the trial court need not set a determinate time since its failure to do so only means that the respondent can be held up to 180 days. (See Ill. Rev. Stat. 1991, ch. 91½, par. 3—813(a).) Respondent suggests that the case of *In re Sneed* (1978), 72 Ill. 2d 326, in which the court held that under the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 701—1 *et seq.*) a minor must be placed on probation for a definite period of time, is controlling. We disagree. The statutory purpose and language of section 3—813(a) are not comparable to that in the statute interpreted in

*Sneed.* We decline to hold that the order of involuntary hospitalization must set forth a determinate time.

Furthermore, contrary to respondent's assertions, the record amply reflects a consideration and rejection of less restrictive alternatives. Dr. Fernando Santaella, who had performed a psychiatric examination on respondent, testified that respondent suffered from mood swings as a result of a mental illness, bipolar disorder. In his opinion, respondent was unable to take care of herself, and she had lost 33 pounds in six months, leading him to conclude that she was in physical danger. Dr. Santaella testified that respondent had no home and, if released, she would be unable to work. It was Santaella's opinion that the Elgin Mental Health Center was the least restrictive environment. Santaella related that if her symptoms subsided and she was able to cooperate with staff in taking her medication, respondent could be released to a halfway house, but if as in the past she stopped taking medication at the halfway house, the staff there could no longer handle her. Santaella stated that if respondent started to cooperate and take her medication she could progress in one or two months. This testimony was uncontradicted. It is clear that Santaella's testimony provided sufficient basis upon which the court could find that involuntary hospitalization at the Elgin mental health facility was the least restrictive alternative.

■ Finally, respondent argues that the trial court's order for involuntary admission must be reversed because it was not supported by clear and convincing evidence. A person is subject to involuntary admission if he is mentally ill and because of his illness is unable to provide for his basic physical needs so as to guard himself from serious harm. (Ill. Rev. Stat. 1991, ch. 91½, par. 1—119(2).) No respondent may be found subject to involuntary admission unless that finding has been established by clear and convincing evidence. (Ill. Rev. Stat. 1991, ch. 91½, par. 3—808.) Here, the psychiatrist who treated respondent testified that respondent had no home, would be unable to work, would not take her medication so that a halfway house could care for her, and ate so sporadically that she had lost 33 pounds in approximately six months and had to be forced to take medication for a five-day period to allow her condition to improve. Furthermore, a caseworker corroborated much of the psychiatrist's testimony regarding respondent's weight loss and failure to take nourishment. While respondent in her brief argues that her own testimony established that she did have sources available to her upon release to ensure that she would receive food and that she did not eat because the hospital food did not taste good,

respondent's outbursts and at times bizarre testimony lend little credence to her assertions. A trial court's determination that a person is subject to involuntary admission will not be disturbed unless that determination is manifestly erroneous. (*People v. R.C.* (1988), 175 Ill. App. 3d 163, 167.) We conclude that the trial court correctly found respondent to be a person subject to involuntary admission.

The judgment of the trial court is affirmed.

Affirmed.

INGLIS, P.J., and BOWMAN, J., concur.