(No. 27559.— )

CHARLES B. ELDER, *vs.* EMMA REES CLARKE *et al.*— (EMMA REES CLARKE, Appellee, *vs.* HERBERT MYERS *et al.*, Appellants.)

*Opinion filed January 18, 1944.*

KRUSEMARK & KRUSEMARK, of Joliet, for appellants.

PENCE B. ORR, of Joliet, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

An original complaint was filed by Charles B. Elder in the circuit court of Will county against Emma Rees Clarke, Herbert Myers and Nela Vivian Myers to set aside a deed alleged to be in fraud of creditors. Elder had obtained a judgment against Emma Rees Clarke, and was

seeking to set aside a conveyance of real property made by her to Herbert Myers and Nela Vivian Myers.

The real controversy in this case arises between Emma Rees Clarke on her amended counterclaim against Herbert Myers and Nela Vivian Myers, in which it is alleged that said deed was made by her at a time when she lacked the mental capacity to transact business, and also because there was no delivery thereof. The answer to the amended counterclaim denies all of these claims, and alleges that the property was conveyed by virtue of a contract under which the grantees were to pay Emma Rees Clarke $15 per month as long as she lived, and to pay all doctor, hospital and funeral bills, as well as taxes, insurance and repairs on the property; and that they had fully performed their part of the contract, and had placed permanent improvements upon the premises of the value of $1500. A reply was filed by counterclaimant denying the matters set forth in such answer. A hearing was had before the chancellor and a decree entered finding Emma Rees Clarke, at the time of the execution of the deed, was incapable of understanding the nature and effect of her act, and incapable of protecting her own interests, and ordering the said conveyance be set aside, and decreeing the said Emma Rees Clarke to be the owner in fee simple, subject to a lien in the sum of $1000 to cover the cost of the permanent improvements placed thereon by appellants.

The original plaintiff is not a party to the appeal as the decree finds he has a prior and first lien on the premises for the amount of his judgment. The sole issue is whether the appellee had the mental capacity to execute the deed in question, and if the action of the trial court in setting aside the deed is sustained, whether $1000 was a sufficient allowance for the permanent improvements placed upon the property. Inasmuch as the decree of the court had the effect of taking the fee-simple title from appellants and placing it in appellee, a freehold is involved.

The case was heard by the chancellor in the circuit court of Will county. The facts disclose that appellee was the owner of a tract containing about ten acres of land improved with a house and certain outbuildings, which had been leased to appellants in April, 1938, for the sum of $15 per month. At that time Mrs. Clarke was about seventy-eight years of age. In October, 1938, she moved to California to live with a relative, and remained there until April 11, 1940. In February of that year she became totally blind. March 23, of the same year, appellee, then eighty years of age, executed by mark a warranty deed conveying said property to appellants, and April 3, 1940, it was acknowledged before a notary public. The deed was not sent to appellants, but was mailed directly to the recorder of Will county and received by him April 9. After the recording of the deed Mrs. Clarke had, in the meantime, returned to Illinois, and the deed was returned by the recorder to the attorney in California, who had prepared it, and he thereupon either sent the deed directly to Mrs. Clarke in Illinois, or to a man who had been Mrs. Clarke's attorney. At any rate the deed was returned to appellee. It was never physically turned over to appellants, but the record thereof constitutes a cloud upon the title, which she seeks to have removed.

A considerable amount of correspondence took place between appellee and appellants while the former was living in California, and it is contended this correspondence shows the terms of a contract under which appellants were to receive the title to the property, and, in return, perform the duties and make the payments set out above.

The issue is almost wholly a question of fact. There is no issue of law raised between the parties on the question of mental capacity. There were eight witnesses who testified on behalf of the counterclaimant, tending to show that from old age and illness she was totally unable to transact or understand business at the time the deed was

executed, and that this condition existed before she went to California, and grew progressively worse. On the other hand, the appellants produced seven witnesses, besides themselves, who were of the opinion she did have the capacity to understand and transact business. Five of these witnesses lived in California and did not know Mrs. Clarke until after she had moved out there, and, of course, knew nothing of her mental condition in former years. The testimony on behalf of appellee shows she was old, in feeble health, and eventually became blind; that at the best she had no business ability; that she consulted a medium, who described a man whom she should consult in a business way, and that upon one occasion, prior to the transaction with appellants, she was thinking of deeding her property to another young man who, she thought, was a true friend and could take the place of a son. After she returned from California one of her friends, who had known her for more than forty years, testified she had no reasoning power, did not recognize her son, whom she had known for years; that she was emaciated and mentally deranged, and that she was delirious part of the time. Appellants claim the agreement was made before Mrs. Clarke moved to California, but this is negatived by a showing she spent almost $200 on repairs during the two years of her visit.

Without detailing all of the testimony, there is ample evidence in the record, if believed, to show appellee was totally unable to transact any kind of business, to say nothing of ordinary business. On the other hand, as to the testimony of witnesses for appellants, five of whom, including the attorney and notary public and his wife, were acquaintances she had formed in California, there is nothing to show they had an extensive acquaintance with her, or any business transactions with her. Only two witnesses were former acquaintances in Illinois, and neither of them had seen or conversed with her from the time she

left for California in 1938. The testimony is voluminous, and it is unnecessary to recite it in detail. It was heard in open court, and the chancellor, who saw and heard the witnesses, had a better opportunity to judge their credibility and the weight to be given to their testimony than has this court. *Redmon* v. *Borah,* 382 Ill. 610.

Appellants place considerable reliance upon the letters they had received from appellee, as tending to establish a contract to make a deed. We have examined these letters with care, and, assuming appellee did have the mental capacity to make a contract, we find nothing in the letters substantiating a contract as claimed by appellants. When a case has been heard by a chancellor, the decree must be against the manifest weight of the evidence, or there must be a clear and palpable error before we will reverse the case. (*Dowie* v. *Driscoll,* 203 Ill. 480; *Biggerstaff* v. *Biggerstaff,* 180 Ill. 407.) We are satisfied the evidence is sufficient to uphold the decree of the chancellor in setting aside the deed of appellee for want of mental capacity.

The question remains as to the amount, if any, appellants should be allowed for the placing of permanent improvements upon the premises. It must be kept in mind appellants never received a deed to the premises. Apparently they knew it was of record. The evidence shows that, after Mrs. Clarke's return in the early part of 1940, a request was made of appellants to remove the cloud from the title by the execution of a quit-claim deed, which they refused to do. It was after this demand and refusal that the major part of the improvements was placed upon the premises.

Appellants offered evidence tending to show the value of the property was enhanced in excess of $1500 by the improvements placed thereon by them. Herbert Myers testified that the total cost of the material for the improvements was $746.43, and that he did all of the work, except about $20 worth. The rule is that where improvements

of a permanent character are made in good faith by one in possession, believing himself to be a *bona fide* purchaser, or an owner for full value, and under circumstances justifying such a belief, and the expenditure is reasonable and of benefit to the estate, an allowance may be made in a court of equity, where title is found to be in another. But the person claiming such allowance will be charged with the value of the use and occupation of the premises. *Cable* v. *Ellis,* 120 Ill. 136; *Clark* v. *Leavitt,* 335 Ill. 184.

In this case it appears demand was made upon appellants to make a quit-claim deed in May or June, 1940, when a very small sum of money, if any, had been expended for improvements. The facts that appellants did not have a deed for the premises, that they entered into possession thereof under a lease, and that a demand was made to clear the cloud upon the title caused by the deed being placed upon record, show that making them any considerable allowance is extending the principle announced to the utmost.

The allowance fixed in the decree reimburses them for all money they actually expended, and in addition $250 for labor, and no charge is made for the actual value of the use of the premises. We are inclined to the view that the court treated appellants liberally in this respect. In the first draft of the decree the allowance was $750, but later was increased to $1000, and we are of the opinion the amount first allowed is more in line with the authorities than that finally allowed. No cross error is urged, and this depends on the proof in the case, but under the finding of the lack of mental capacity of appellee, the appellants are in no position to complain of the amount of the award for improvements.

We find no error in the proceedings, and the decree of the circuit court of Will county' will be, accordingly, affirmed.

*Decree affirmed.*