MILE DJOMLIJA *et al.*, Plaintiffs-Appellees, *v.* KENNETH URBAN *et al.*, Defendants-Appellants.

First District (3rd Division)    Nos. 79-1516, 79-2103, 80-490 cons.

Opinion filed June 30, 1982.

Richter & Tucker, Ltd., of Chicago, for appellants.

Robert J. Hinkes, of Chicago, for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs, Mile and Mira Djomlija, brought suit for specific performance of a real estate contract against defendants, Kenneth and Margaret Urban. The trial court entered judgment in favor of plaintiffs. We affirm.

On June 28, 1977, the parties entered into a contract whereby defendants were to convey to plaintiffs a six-unit apartment building in Des Plaines, Illinois, at a price of $134,900. The contract contained a mortgage contingency clause which provided that plaintiffs had 30 days within which to secure a written mortgage commitment. Plaintiffs were to notify defendants in writing within the 30-day period if they were unable to obtain the commitment. If defendants were not so notified, it would be conclusively presumed that plaintiffs had secured a commitment or that they would purchase the property without mortgage financing. No closing date was specified in the contract. Plaintiffs did not secure a mortgage commitment within the 30-day period, and they did not notify the sellers that a commitment had not been obtained.

Plaintiffs testified that they were informed by the sellers' broker that the sellers were not in a hurry to close and wanted to postpone the closing until after January 1, 1978, for income tax purposes. Plaintiffs therefore did not believe that it was urgent that they obtain the mortgage commitment. Plaintiffs also were not in a hurry to close because they planned to close on the sale of a building they owned in Rosemont, Illinois, in early September, and they wanted to apply some of the proceeds towards the

purchase of the Des Plaines property. Plaintiffs stated that they would have had sufficient funds for the closing without these proceeds.

Plaintiffs' attorney testified that he first tried to set a closing date for the first or second week in September which was when he first learned the name of defendants' attorney. It appears that no closing date was arranged at that time. According to plaintiffs' attorney, sometime prior to mid-October, defendants' attorney informed him that defendants wanted to delay the closing for personal reasons. In Mid-October, defendants' attorney suggested that the closing could go ahead "if the broker was eliminated" because defendants were unhappy with the broker's actions. Plaintiffs refused to alter the contract in regard to the broker's commission. Plaintiffs' attorney further testified that he again contacted defendants' attorney regarding the closing in November. He was unaware that defendants did not intend to close until he received a letter to that effect from defendants' attorney in December.

Defendants testified that they were not sure that they wanted to sell the property and that they had put the property up for sale "[just to see] what the market would bring." It was their understanding that they had the option of choosing whether or not to close on the property. Defendants learned in early August that plaintiffs did not have a mortgage commitment. Defendants told the broker and their attorney that they did not wish to sell and that the earnest money should be returned to plaintiffs. According to defendants, neither plaintiffs nor their attorney demanded that a closing date be set, and plaintiffs never tendered the funds needed to close.

The trial court ruled that plaintiffs were entitled to specific performance. It ordered that the closing take place within 30 days. The closing was aborted several times and finally occurred in late December. The closing took place after defendants filed their notice of appeal. The trial court also dismissed defendants' suit for declaratory judgment which defendants had filed in the third municipal district shortly before plaintiffs brought this action. The declaratory judgment action had been transferred to the chancery division of the first district and consolidated with this specific performance action.

Defendants first contend that plaintiffs were not entitled to specific performance because plaintiffs breached the contract. Defendants' argument relates in part to the mortgage contingency clause, which reads:

"This offer is contingent upon me securing within 30 days of acceptance hereof by owner of said property a mortgage loan commitment in writing for $107,900 with interest at not more than 9% per annum * * *. If I do not obtain such commitment, I shall notify Seller in writing within said number of days. If Seller is not

so notified it shall be conclusively presumed that I have secured such commitment or will purchase said property without mortgage financing. If seller is so notified, Seller and broker may, within an equal number of additional days secure a mortgage commitment for me upon the same terms. * * * If I notify Seller as above provided, and neither I, Seller, nor broker, secure * * * such commitment * * *, this agreement shall be null and void and all earnest money shall be returned to me * * *."

According to defendants, plaintiffs did not comply with the clause because they "failed to obtain a written mortgage commitment and further failed to notify [defendants] in writing of such failure within the required 30 day period."

■■ We believe that the language of the mortgage contingency clause itself disposes of defendants' argument. Under the terms of the clause, if plaintiffs did not notify defendants in writing within the 30-day period that they were unable to obtain the commitment, then a conclusive presumption would arise that plaintiffs had either secured a mortgage commitment or would purchase the property without mortgage financing. Since plaintiffs did not notify defendants in writing that they had not obtained a commitment, this presumption arose. The effect of plaintiffs' failure to notify defendants in writing that they did not have a written commitment was to make the contract binding and not, as defendants suggest, to terminate it. The contract could not have become null and void unless plaintiffs notified defendants in writing that they did not obtain a commitment and thereafter defendants and their broker failed to secure financing for plaintiffs. This did not occur. Defendants' claim that they orally learned of plaintiffs' failure to get a commitment is of no significance since the contract became binding in the absence of *written* notification. We therefore reject defendants' argument that plaintiffs breached the contract by failing to comply with the mortgage contingency clause.

■■ Defendants also argue that plaintiffs breached the contract because they did not deposit with the broker the total amount of earnest money required by the contract. The contract reads: "$ *One Thousand* * * * earnest money * * * (equal to at least 10% of the purchase price) * * *." While $1000 is less than 10% of the purchase price of $134,900, this inconsistency is insufficient to defeat plaintiffs' right to specific performance. First, the words "One Thousand" are written by hand while the rest of the provision is printed. Generally, where there is conflict in a contract between handwritten and typed or printed terms, the handwritten terms will be deemed controlling. (*Berman Leasing Co. v. Chicago Terminal Clearance, Inc.* (1967), 88 Ill. App. 2d 43, 46, 232 N.E.2d 180, 182; see *Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54

Ill. App. 3d 317, 322, 369 N.E.2d 525, 529.) In addition, the balance to be paid is shown in the contract as $133,900, a figure which is consistent with the $1000 earnest money figure. Finally, it appears that defendants did not object to the payment of only $1000 until after the trial. Under the circumstances, we cannot say that plaintiffs breached the earnest money provision.

Defendants next contend that plaintiffs should not have been granted specific performance because they were not ready, willing and able to close. Defendants argue that plaintiffs were not able to close until after they sold their Rosemont property in September. Plaintiffs, however, testified that while they would have liked to have applied the Rosemont sale proceeds to the purchase of the property involved here, those funds were not essential, and the money could have been obtained in other ways. Moreover, defendants never demanded that the closing be set before the completion of the Rosemont sale. Mere speculation by defendants that plaintiffs were not ready, willing and able to perform within the 2½, months following the signing of the contract is an insufficient basis upon which to deprive plaintiffs of their right to specific performance.

■■ Defendants further argue that plaintiffs were not ready, willing and able to close on July 23, 1979, a date set by the court for closing. It is undisputed that plaintiffs did not tender the purchase money on this date. However, to be entitled to specific performance, a party need not have performed according to the terms of the contract if he can establish that he was ready, willing and able to perform but was prevented, and thus excused, from doing so by the acts of the other party. (See *Tantillo v. Janus* (1980), 87 Ill. App. 3d 231, 234, 408 N.E.2d 1000, 1003.) We believe that plaintiffs' failure to tender the purchase money on July 23 was caused by defendants' actions and was therefore excusable.

Plaintiffs both alleged and proved that they were ready, willing and able to close at virtually all times. Although numerous closing dates were set by the court, defendants consistently caused them to be cancelled. Defendants aborted a June closing date by filing their post-trial motion the day before. As for the closing set for July 23, defendants filed their notice of appeal only one court day prior thereto. Plaintiffs did not learn of the filing prior to the scheduled closing, and their prospective mortgagee, Western Savings & Loan Association, refused to relinquish the mortgage money due to the pending appeal. Another closing was set for September, and one day before it was to occur defendants filed a related suit in the Federal district court. That same day, defendants sought a stay of the closing in this court. The motion for the stay was granted upon condition that defendants post a $10,000 bond. It does not appear that this bond was ever posted, and the stay was vacated in early October. De-

fendants caused yet another closing to be aborted in November. The closing finally took place in court in December.

■■ We believe that plaintiffs' inability to close on July 23 must be attributed to defendants. While we agree with defendants that their right to appeal could not be nullified by the closing, this does not mean that they were entitled to use their notice of appeal as a means of preventing the closing in the absence of a stay. The record shows a consistent pattern of last minute maneuvers on defendants' part to thwart the various scheduled closings, including the closing that was to have occurred on July 23. By filing their notice of appeal shortly before July 23 and not immediately notifying plaintiffs of the filing, defendants effectively prevented plaintiffs from securing the purchase money mortgage. Plaintiffs had no opportunity to discuss with Western Savings the effect that the notice of appeal would have on the loan or to make other arrangements for financing. Under the totality of the circumstances, plaintiffs' inability to tender the purchase money on July 23 does not vitiate plaintiffs' right to specific performance.

■■ Also in this regard, defendants argue that the court lacked jurisdiction to set closing dates and to amend the final judgment once the notice of appeal was filed. However, by resetting the closing dates the court was not substantively changing its prior orders but rather was enforcing its orders for specific performance. The court had specifically retained jurisdiction to enforce its orders. Since defendants did not seek a stay of the judgment for specific performance (other than the stay they sought in September for which they never posted the requisite bond), the operation of the judgment was not suspended by the filing of the notice of appeal (see 2 Ill. L. & Prac. *Appeal & Error* sec. 398 (1953)). Therefore, the court did not err in acting to enforce its judgment.

■■ Defendants next contend that the contract was not specifically enforceable because it did not provide for a closing date and the terms regarding the earnest money were ambiguous. While it is true that a contract must be clear, certain and definite in its material provisions in order to be specifically enforceable (see *Crane v. Mulliken* (1980), 86 Ill. App. 3d 1076, 1081, 408 N.E.2d 778, 781), the contract was not so ambiguous or lacking in material terms that specific performance should not have been allowed. We have previously discussed the apparent inconsistency in the provision relating to the earnest money and determined that the contract provided for the payment of $1000 rather than 10% of the purchase price. Additionally, we do not believe that the lack of a closing date is a material omission. Where a contract does not set a closing date and time is not made of the essence, the law will imply that the contract is to be performed within a reasonable time. (*Bladel v. Carroll* (1929), 336 Ill. 168, 170-71, 167 N.E. 790, 791; *Ullsperger v. Meyer* (1905), 217 Ill. 262,

267, 75 N.E. 482, 484; *Werling v. Grosse* (1979), 76 Ill. App. 3d 834, 841-42, 395 N.E.2d 629, 635.) An exact closing date was not essential to the contract here, and the court could supply a closing date without altering the agreement between the parties. Defendants' contention that the court could not supply a closing date because the parties never agreed to close is untenable. Nothing in the contract supports defendants' contention that they had an option not to close.

The granting of the equitable remedy of specific performance is a matter of sound judicial discretion controlled by established principles of equity and exercised upon a consideration of all the facts and circumstances in the particular case. (*Faulkner v. Black* (1941), 378 Ill. 112, 118, 37 N.E.2d 796, 800.) We conclude that plaintiffs are entitled to specific performance and that it would be inequitable to deny them the benefit of their contract. Compare *Nyder v. Champlin* (1948), 401 Ill. 317, 81 N.E.2d 923.

Next, defendants contend that the trial court erred in excluding their testimony about improvements they made to the subject property "after the Contract [was] signed and during a period of time they believed the deal was dead." According to defendants, if the trial court had known that defendants had spent approximately $2000 on improvements, it might have concluded that it would be inequitable to grant plaintiffs specific performance or that defendants should be awarded a $2000 "allowance." Defendants rely on *Fitzpatrick v. Allied Contracting Co.* (1962), 24 Ill. 2d 448, 456, 182 N.E.2d 183, 187, where the court quoted the rule set forth in *Elder v. Clarke* (1944), 385 Ill. 335, 339-40, 52 N.E.2d 778, 780, that "where improvements of a permanent character are made in good faith by one in possession, believing himself to be * * * an owner for full value, and under circumstances justifying such a belief, and the expenditure is reasonable and of benefit to the estate, an allowance may be made in a court of equity, where title is found to be in another."

■■ The rule relied on by defendants is clearly inapposite here. Defendants did not make an offer of proof as to the nature of the alleged improvements or their permanent character. Moreover, the evidence shows that defendants were not justified in their belief that they would continue to own the property because the contract was not binding and they had the option not to perform. Knowing that they had executed a contract to sell their property, defendants could not then make improvements and hope to alter or defeat the contract by their actions. Therefore, even if defendants' testimony regarding improvements had not been excluded, equitable principles would still have required that plaintiffs be granted specific performance and that defendants be denied compensation for the improvements.

■■ Finally, defendants argue that the declaratory judgment action which

they filed in the municipal department of the third district of Cook County should not have been transferred to the chancery division of the first district of Cook County and should not have been consolidated with the action for specific performance. Defendants' argument that the declaratory judgment action was erroneously transferred to the chancery division rather than the law division overlooks the fact that under the Illinois Constitution of 1970, the distinction between courts of law and equity was abolished, thereby vesting the circuit court with original jurisdiction of all justiciable matters (with certain exceptions not applicable here). (*Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 115, 387 N.E.2d 878, 885; *Stevens v. Protectoseal Co.* (1975), 27 Ill. App. 3d 724, 729, 327 N.E.2d 427, 431; Ill. Const. 1970, art. 6, sec. 9.) The divisions of the circuit court of Cook County, law division *vis-a-vis* chancery division, are for administrative purposes only and no longer constitute jurisdictional barriers. (*Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 115, 387 N.E.2d 878, 885; see H. Fins, Illinois Appellate Practice Under the New Constitution 110-19 (2d ed. 1977).) Therefore, since the trial court had jurisdiction to hear the issues in the declaratory judgment action, defendants' argument is untenable.

■■ Moreover, we believe that the declaratory judgment action was properly consolidated with the action for specific performance. Pursuant to section 51 of the Civil Practice Act, actions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right. (Ill. Rev. Stat. 1977, ch. 110, par. 51; see *Vitale v. Dorgan* (1975), 25 Ill. App. 3d 941, 944, 323 N.E.2d 616, 618.) The trial court is given broad discretion in determining whether to grant a motion to consolidate. (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 355-56, 366 N.E.2d 327, 335.) The gist of the allegations in the complaint for declaratory judgment was that the contract between plaintiffs and defendants was null and void because plaintiffs did not secure a mortgage commitment within the allotted time and the contract did not provide for a specific closing date. The relief sought was a declaration that the contract was null and void, execution of a release by plaintiffs of any interest in the property which they claimed under the contract which they had recorded, and an award of costs. The issues raised by the declaratory judgment action were virtually identical to those raised in the specific performance action, and failure to consolidate the actions could have resulted in inconsistent judgments. Under these circumstances, there was no abuse of discretion in consolidating the two cases. The consolidation was clearly proper.

The only remaining question is whether consolidation of these cases in the chancery division resulted in an improper denial of defendants' right to a jury trial. Under section 64 of the Civil Practice Act, a plaintiff

who desires a trial by jury must file a demand therefor with the clerk at the time the action is commenced. (Ill. Rev. Stat. 1977, ch. 110, par. 64.) Good cause must be established in order to obtain an extension of time in which to file a late jury demand. (*Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 95, 382 N.E.2d 1201, 1203; see Ill. Rev. Stat. 1977, ch. 110, par. 59; Ill. Rev. Stat. 1977, ch. 110A, par. 183.) Defendants here did not file a jury demand when they filed their complaint for declaratory judgment on January 25, 1978. They did file a timely jury demand in the specific performance action on May 24, 1978. On June 5, defendants filed a petition for leave to file a jury demand in the declaratory judgment action. Defendants alleged that they had not filed a jury demand originally because "inasmuch as the action is a declaratory judgment * * * there were no factual issues"; that the action had been transferred to the first district for consolidation with the specific performance action; and that "[t]herefore, there are now factual disputes in the case, which disputes should be adjudicated by a jury." No ruling on this petition is in the record.

■■ Under the circumstances, defendants were not denied a right to a jury trial. Defendants made no demand for a jury at the time they filed their declaratory judgment action. Their contention that they were entitled to a jury trial is based on factual issues which they assert were raised in the specific performance action. However, the factual issues raised in the specific performance action were essentially the same as those involved in the declaratory judgment action, and therefore, consolidation of the specific performance action with the declaratory judgment action does not constitute a showing of good cause which would have entitled defendants to file a late jury demand in their action for declaratory judgment. Moreover, the granting of a jury trial where equitable relief is sought is discretionary with the trial court. (Ill. Rev. Stat. 1977, ch. 110, par. 63.) We conclude that defendants' contentions are without merit.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

WHITE, P. J., and McGILLICUDDY, J., concur.