*In re* RITA GUZIK, Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Rita Guzik, Respondent-Appellant).

Second District   No. 2—91—1271

Opinion filed August 9, 1993.

William E. Coffin, of Guardianship & Advocacy Commission, of Chicago, for appellant.

David R. Akemann, State's Attorney, of Geneva (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Following an October 25, 1991, hearing on the State's emergency petition for involuntary admission pursuant to the Mental Health and Developmental Disabilities Code (Mental Health Code or Code) (405 ILCS 5/3—600 *et seq.* (West 1992)), the circuit court entered an order finding respondent, Rita Guzik, to be a person subject to involuntary admission. The petition had alleged that she was in need of immediate hospitalization because she was mentally ill and because of her illness was unable to provide for her basic physical needs so as to guard herself from serious harm. (See 405 ILCS 5/1—119(2) (West 1992).) When the court noted that there was no social assessment report, the court continued the matter until November 22, 1991, for the presentation of the social assessment report, a treatment plan, and the entry of a "final order" of commitment.

On November 1, 1991, respondent filed her notice of appeal, arguing that the order of October 25 adjudicating her a person subject to involuntary commitment must be reversed because the trial court ordered a continuance in excess of 15 days contrary to the provisions of the Code (see 405 ILCS 5/3—800 (West 1992) (continuances shall not extend beyond 15 days unless requested by the respondent)). Alternatively, respondent argues that, under the rules of limited statutory jurisdiction, because the trial court failed to follow the provisions of the Code, the court lacked subject-matter jurisdiction and its order was therefore void. Finally, respondent argues that, on the merits, the adjudicatory order must be reversed because the evidence was not clear and convincing enough to show that respondent was unable to provide for her basic physical needs so as to guard herself from serious harm.

After considering respondent's arguments concerning jurisdiction, we conclude that this court does not have appellate jurisdiction to hear her appeal. The notice of appeal from the October 25 order appears to be premature as it concerns an interlocutory, nonfinal order, and no timely notice of appeal was filed to perfect her appeal from the November 22, 1991, order of disposition. We cannot therefore reach the merits of respondent's contentions, and we must dismiss the appeal.

The record shows that, on January 24, 1992, more than two months after the dispositional order of November 22, respondent filed with this court motions which alternatively sought to amend the November 1, 1991, notice of appeal to include the trial court's order of November 22, 1991, or to file a late notice of appeal from the later order. On January 28, 1992, the State filed objections to respondent's alternative requests and asserted that the requirements for amendment or a late notice of appeal could not be met in accordance with Supreme Court Rules 303(c)(4) and (e) (134 Ill. 2d Rules 303(c)(4), (e)). Additionally, the State suggested that respondent be required to establish our appellate jurisdiction because she had filed what appeared to be a premature notice of appeal from the October 25 order.

On February 5, 1992, we denied respondent's motion to amend the notice of appeal or to file a late notice of appeal and ordered respondent to file a memorandum of law addressing this court's jurisdiction to review the October 25, 1991, order. On March 3, 1992, we denied respondent's motion to reconsider the order of February 5, 1992. We ordered respondent's memorandum of law on this court's appellate jurisdiction to be taken with the case.

In her memorandum of law, respondent first argues that the order of October 25 is a final order under Rule 301 (134 Ill. 2d R. 301) even though there were matters left undecided, namely, the court's review of the social assessment report, the treatment plan, and the entry of a final disposition. Respondent cites no authority directly on point holding that a court's initial adjudication or finding that a person is subject to involuntary admission under the Code is immediately reviewable in this court where no final disposition has been made. Although respondent suggests that this court has routinely reviewed such adjudications without the trial court's having considered the respondent's treatment plan, she cites no actual cases in support of her position.

■ Section 3—816 of the Code provides that an appeal from a final order may be taken in the same manner as in other civil cases. (405 ILCS 5/3—816 (West 1992).) For this court to have jurisdiction,

the order of the trial court must· be a final order unless it comes within the exceptions set forth by the supreme court rules. (*Pottorf v. Clark* (1985), 134 Ill. App. 3d 349, 351; see *In·re J.N.* (1982), 91 Ill. 2d 122; 126.) A final judgment is one which fixes absolutely and finally the rights of the parties in the lawsuit; it is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with execution of the judgment. (*Flores v. Dugan* (1982), 91 Ill. 2d 108, 113.) An order which leaves the cause still pending and undecided is not a final order. (*In re Johnson* (1981), 102 Ill. App. 3d 1005, 1014.) Thus, even though a party challenges an order for voidness, the order may be deemed neither final nor immediately appealable if it reserves an issue for further consideration or otherwise manifests the court's intention to retain jurisdiction for the entry of a further order. See *Nelson v. United Airlines, Inc.* (1993), 243 Ill. App. 3d 795, 799-800, relying in part on *Gatto v. Walgreen Drug Co.* (1975), 61 Ill. 2d 513, 518-20.

In the instant case, the trial court's order clearly reserved issues for further consideration and stated that it would enter a "final order" of commitment on November 22, 1991. The order was not final because the trial court did not make a final disposition.

■ Alternatively, respondent argues that the adjudicatory order was final and appealable under Rule 304(b)(1) (134 Ill. 2d R. 304(b)(1)) because an order is final and appealable as to fewer than all parties or claims without a special finding that there is no just reason for delaying enforcement or appeal if the order is "entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." (134 Ill. 2d R. 304(b)(1).) Respondent likens a civil commitment proceeding to one in which there is an order appointing or removing a guardian under Rule 304(b)(1).

In support of her position, respondent cites *In re Estate of Neuf* (1980), 85 Ill. App. 3d 468 (order refusing to remove respondents as conservators was an appealable order which disposed of all issues), and *In re Estate of Storino* (1977), 51 Ill. App. 3d 49 (where order appointed respondent guardian of the estates and persons of minors and the only issue° before the trial court was the appointment of a guardian, the order was final and appealable). However, unlike the present case, in each of these cited cases the order was final because it disposed of the entire issue or controversy. Additionally, respondent cites no case wherein· an involuntary admission under the Code was appealed under Rule 304(b)(1), and our research has not revealed such a case.

To be final, a judgment must dispose of or terminate the litigation or some definite part of it. If jurisdiction is retained for the future determination of matters of substantial controversy, the order is not final. (*Rotogravure Service, Inc. v. R.W. Borrowdale Co.* (1975), 36 Ill. App. 3d 606, 609.) Here, the court's order did not completely and finally determine respondent's rights or status, and the matter was subject to further consideration by the court before a final order of disposition would be entered. We conclude that the court's adjudication that respondent was a person subject to involuntary commitment under the Code does not qualify as a "final" order either under Rule 301 or under Rule 304(b)(1). Rather, we believe that this type of proceeding is more closely analogous to proceedings brought under the Juvenile Court Act of 1987 (Juvenile Court Act or Act) (705 ILCS 405/1—1 *et seq.* (West 1992)), which was intended to provide for the protection, guidance, care, custody and guardianship of delinquent, addicted, abused, neglected or dependent minors. Indeed, in her brief, respondent herself analogizes the limited subject-matter jurisdiction of courts in civil commitment proceedings to that of juvenile court proceedings in arguing that a trial court may be deprived of jurisdiction to enter an adjudicatory order where the notice requirements are not followed. See, *e.g., People v. R.S.* (1984), 104 Ill. 2d 1.

Our supreme court has similarly analogized the notice requirements of civil commitment proceedings to those of proceedings under the Juvenile Court Act in determining that strict, formal notice requirements may be excused where there was no objection, the party had actual notice, and no prejudice could be said to have resulted. *In re Splett* (1991), 143 Ill. 2d 225, 231-32, discussing *In re J.W.* (1981), 87 Ill. 2d 56.

In a juvenile proceeding, an order finding a minor neglected and adjudicating wardship is not a final order. (*In re Johnson* (1981), 102 Ill. App. 3d 1005, 1014.) Rather, the dispositional order is the final judgment from which the appeal is taken. (*In re J.M.* (1987), 151 Ill. App. 3d 1037, 1038, citing *In re J.N.* (1982), 91 Ill. 2d 122, 127; *In re Smith* (1980), 80 Ill. App. 3d 380, 381.) Although civil commitment proceedings differ in some significant respects from juvenile proceedings (see *In re Lamb* (1990), 202 Ill. App. 3d 725, 729), proceedings under the Mental Health Code are somewhat analogous to bifurcated juvenile proceedings in having an adjudicatory phase (finding a respondent subject to involuntary admission) and a final disposition. The Code distinguishes between a finding that the person is subject to involuntary admission and the court's determination of an appropriate

disposition. See 405 ILCS 5/3—808, 5/3—809, 5/3—810, 5/3—811 (West 1992).

Before a final disposition is ordered, the Mental Health Code requires that the court consider a predispositional report which includes the availability of alternative treatment settings, a social investigation of respondent, a preliminary treatment plan, and any other information that the court requires before it may determine an appropriate disposition. (See 405 ILCS 5/3—809, 5/3—810 (West 1992).) The purposes of the report are to assist the court in determining the necessity for involuntary admission to a mental health facility, to protect against unreasonable commitments and patient neglect, and to assure adequate treatment for mental health care recipients. See *In re Robinson* (1992), 151 Ill. 2d 126, 133.

Since a well-considered disposition was necessary to a final determination of the rights or status of the respondent in this civil commitment proceeding, we hold that it was the final disposition which constituted the final order from which an appeal could be taken. Ordinarily, there will be little delay between the adjudication and the final disposition. In some cases, the final disposition will immediately follow or be virtually contemporaneous with the adjudication where the court has the requisite evidence and information before it. In the case at bar, because respondent filed a notice of appeal after the finding and before the final disposition, the appeal was premature, and this court has no jurisdiction to consider the merits of respondent's contentions. See, *e.g., In re Lee* (1979), 73 Ill. App. 3d 449, 450.

In reaching our conclusion, we are not unaware of its ramifications. We observe that the trial court had personal jurisdiction and subject-matter jurisdiction of the cause when it made its finding on October 25, 1991. There is no assertion that the proceedings were improperly initiated. No objection has been made to the sufficiency of the notice or the timeliness of the adjudicatory hearing; respondent appeared at the hearing and was represented by counsel. The court had jurisdiction to hear the case on the merits. (See *In re Devine* (1991), 214 Ill. App. 3d 1, 3, 6; see also *In re Nau* (1992), 153 Ill. 2d 406, 417-19.) Even if we were able to consider the issue of voidness raised by respondent on appeal, we fail to see how the order continuing the cause for final disposition would invalidate the court's *prior* adjudication and render the prior decision void for want of jurisdiction.

Although respondent complains that the trial court *sua sponte* wrongly ordered a continuance of more than 15 days, she failed to bring the error to the attention of the court by objecting to the con-

tinuance and appears, instead, to have acquiesced in the delay. The proper remedy was not a premature appeal to this court. Respondent could have challenged, but chose not to contest, the court's continuance of the matter, and this error could have been easily corrected. Additionally, if respondent remained wrongly confined, among other things, she could have sought a writ of *habeas corpus* to secure her release. (*In re Houlihan* (1992), 231 Ill. App. 3d 677, 682; 405 ILCS 5/3—905 (West 1992).) A person hospitalized or admitted to alternative treatment by virtue of a court order may also petition to be discharged under section 3—900 of the Code (405 ILCS 5/3—900 (West 1992)). Finally, respondent could have perfected a timely appeal from the final order of disposition.

While this court does not condone impermissible delays in civil commitment proceedings, the Code appears to be silent regarding any specific remedy for delays caused by unwarranted continuances, and this court would be reluctant to create a remedy in the absence of deliberate or egregious conduct by the State which deprived respondent of her rights. (See *In re Williams* (1987), 151 Ill. App. 3d 911, 918-19.) The issue cannot be resolved in the present case and may be more properly a matter for the legislature to consider. See *In re Williams* (1986), 140 Ill. App. 3d 708, 713.

In sum, we hold that respondent cannot perfect her appeal from a nonfinal order of adjudication either under Rule 301 or Rule 304(b)(1). In a civil commitment proceeding, under the circumstances presented here, an appeal is proper if it is taken from a final order of disposition. Because respondent's notice of appeal was premature, we have no appellate jurisdiction. We must therefore dismiss the appeal.

Appeal dismissed.

QUETSCH and COLWELL, JJ., concur.