MARY DJIKAS, Plaintiff-Appellee, v. JOHN GRAFFT, Defendant-Appellant.

First District (1st Division)   No. 1—02—1193

Opinion filed October 27, 2003.

Robert Habib, of Chicago, for appellant.

Thomas E. Roche, of Keeley, Kuenn & Reid, of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

The instant cause of action arose from a lease between plaintiff Mary Djikas and defendant John Grafft, which included an option to purchase. Plaintiff brought an action for a declaratory judgment and specific performance to enforce the option, which was granted by the trial court. The trial court subsequently granted plaintiff's petition for further relief, requiring defendant to satisfy a mortgage on the property before transfer. Over two months later, defendant presented an oral motion in the trial court requesting a final and appealable order, which the court granted. Defendant now appeals the final and appealable order. We dismiss defendant's appeal for lack of subject matter jurisdiction.

## BACKGROUND

In October 1996, the home of plaintiff's son, Paul, was sold for delinquent taxes. Shortly thereafter, Paul entered into an agreement with defendant, whereby defendant purchased the tax deed for the home from the tax purchaser and acquired title. Defendant then obtained a mortgage on the property from a mortgagee referred to as "BNC Mortgage."[1] Upon acquiring title to the home, defendant entered into a lease with Paul's mother, plaintiff Mary Djikas. Although Paul negotiated the terms of the lease and stated that he would be the person who actually paid the rent, plaintiff signed the lease as lessee. The lease provided that Paul would live in the home and pay rent at a rate of $7,575.80 for the first month and $977.49 plus taxes and insurance, for a total of $2,135, each month thereafter. It also included an option to purchase the home for $79,931.98 in ad-

---

[1]The full, legal name of BNC Mortgage has not been provided in the record on appeal.

dition to the cost of renovations to be calculated pursuant to paragraph 33 of the lease. Paragraph 33 provided that plaintiff must pay 110% of the cost of any renovations paid for by defendant as well as a 25% oversight fee for such renovations at an annual interest rate of 18%. The lease commenced on April 1, 1997, and expired March 31, 1998.

In December 1997 or January 1998, the parties entered into negotiations regarding plaintiff's purchase of the home from defendant. In February 1998, plaintiff's attorney wrote defendant a letter acknowledging a prior conversation during which defendant agreed to extend the current lease one month, until April 30, 1998, and agreed to grant plaintiff a new five-year lease with an option to purchase at "any time during the lease term, with the rental to be determined by [defendant]." The letter further provided that defendant was willing to help plaintiff obtain a loan to repair and purchase the home. A new five-year lease was never reduced to writing.

According to the trial testimony, defendant and plaintiff began repairs on the home in March 1998, in order to enable plaintiff to obtain a mortgage to purchase the property, and, in December 1998, defendant referred plaintiff to a mortgage broker to aid her in obtaining a mortgage. In February 1999, defendant sent a letter to plaintiff informing her that the purchase price of the home would be $250,000. Discussions regarding the purchase price ensued over the next couple of months. In March, defendant paid off the BNC mortgage and obtained a $280,000 mortgage on the property from mortgagee "Washington Mutual,"[2] for which he began making monthly mortgage payments. One month later, plaintiff's attorney sent defendant a letter, which was introduced into evidence, announcing plaintiff's exercise of the option to purchase, and offering a purchase price of $165,637.23. Defendant rejected plaintiff's tender, responding that the original lease and option had expired on April 30, 1998, as no new lease had been drafted.

In January 2000, plaintiff filed her first complaint for declaratory relief and specific performance of the lease, and in March or April of that year, defendant sent plaintiff a notice that the rent would be increased to $5,735 per month. Plaintiff continued paying $2,135 a month through November 2000, at which time she ceased paying rent altogether. At that time, defendant began paying the taxes and insurance on the home.

On April 5, 2001, plaintiff filed her third amended complaint in the circuit court and it is that amended complaint which now frames

---

[2]Again, this court has not been provided with the full, legal name of Washington Mutual.

the issues for appeal. The complaint alleged the existence of a lease and option to purchase, the terms of which were contained in the original lease signed by the parties in April 1997. Pursuant to these terms, count I of the complaint requested a declaratory judgment construing the lease and option to purchase, particularly the above-mentioned paragraph 33, in order to establish the purchase price of the property, as well as a declaration of the correct purchase price. Count II prayed for specific performance of the preexisting written lease, thereby enabling the sale and transfer of the property. On April 16, 2001, defendant filed an answer and counterclaim, which denied the existence of a lease and option to purchase, as the alleged lease had expired April 30, 1998. Defendant further prayed for unpaid rent, which had been withheld since November 2000.

A bench trial commenced on May 1, 2001, and was continued a number of times over the next several months. On September 20, 2001, the trial court entered the following written order:

"1. On plaintiff's action for declaratory judgment, the court declares the purchase price under the contract to be $158,734.60.

2. On defendant's counterclaim for rent, judgment is entered for the defendant in the amount of $21,350 representing rent due through September, 2001.

3. The contract shall be performed by adding the rent due to the purchase price.

4. Rent shall continue to accrue at $2,135 per month due on the first day of the month.

5. Plaintiff shall tender the purchase price on or before November 5, 2001, closing to occur within a reasonable time thereafter."

Neither party filed any postjudgment motions to reconsider, vacate or modify.

On November 1, 2001, plaintiff filed a "petition for further relief" alleging that she attempted to tender the previously declared purchase price to defendant, but that defendant refused to satisfy an outstanding $270,000 mortgage lien held by Washington Mutual before transferring the property. The petition argued that defendant's theory, that he need not convey title to the property clear of the mortgage lien, was inconsistent with the court's previous declaration of rights. Plaintiff requested further relief by way of a declaration requiring defendant to satisfy the $270,000 mortgage prior to accepting the purchase price. On December 3, 2001, the court entered the following written order:

"1. Defendant shall communicate with Plaintiff's counsel to arrange a closing on a date and time that is at the earliest possible convenience of the parties and no later than February 1, 2002.

2. At the closing, Defendant shall convey fee simple title to the premises via quit claim deed subject only to the encumbrances specified in paragraph 5, sub-sections (a) through (i) of the Rider.

3. The closing shall otherwise proceed in accordance with the terms of the Rider and the declaratory judgment that has been rendered by this Court.

4. Plaintiff shall not be responsible for rent accruing after October 31, 2001, but Plaintiff shall be responsible for real estate taxes accruing after October 31, 2001.

5. Plaintiff's request for sanctions is denied."

Again, no postjudgment motions were filed.

On February 4, 2002, plaintiff filed a petition for rule to show cause why defendant should not be held in contempt of court for willfully violating the orders of the court. Plaintiff alleged she was ready, willing and able to proceed to closing, but that defendant refused to close the ordered transaction by the required date. Plaintiff requested that defendant be held in contempt and that punitive and coercive sanctions be imposed. On February 15, 2002, the parties appeared before the circuit court on plaintiff's petition for rule to show cause and, according to the court's order, it appears as though defendant made an oral "motion for entry of final and appealable order," although no written motion has been provided in the record. Plaintiff's response to the motion has been provided, however, and it denied the need for a final and appealable order because, it argued, the September 20, 2001, order was final and appealable. After hearing argument on the motions (a transcript of which has not been provided in the record), the court entered the following order on March 26, 2002:

"1. Judgment is entered as follows:

A.) On plaintiff's action for declaratory judgment, the court declares the purchase price under the contract to be $158,734.60.

B.) On defendant's counterclaim for rent, judgment is entered for defendant in the amount of $21,350 representing rent due through September, 2001.

C.) The contract shall be performed by adding the rent due to the purchase price.

D.) Rent shall continue to accrue at $2,135 per month, due on the first day of the month.

E.) At the closing, defendant shall convey fee simple title to the premises via quit-claim deed subject only to the encumbrances specific in paragraph 5, sub-sections (a) through (i) of the Rider.

F.) The closing shall otherwise proceed in accordance with the terms of the Rider and the declaratory judgment that has been rendered by this court.

G.) Plaintiff shall not be responsible for rent accruing after October 31, 2001, but plaintiff shall be responsible for real estate taxes accruing after October 31, 2001.

H.) Plaintiff's request for sanctions is denied.

2. Defendant shall respond to Plaintiff's petition for rule to show cause on or before April 10, 2002.

3. Plaintiff's petition for rule to show cause is continued for hearing on April 12, 2002, 10:00 a.m.

4. The court finds that there is no just reason for delaying enforcement or appeal."

On April 12, 2002, defendant filed a notice of appeal from the March 26, 2002, order. Subsequently, on May 7, 2002, defendant filed a motion in the circuit court to stay the judgment pending appeal. It appears that following a hearing on December 13, 2002, defendant was found in contempt and sanctions were granted, although no order has been provided in the record on appeal.

On March 13, 2003, plaintiff filed in this court a motion to dismiss defendant's appeal for lack of subject matter jurisdiction, contending that the trial court entered final judgment on September 20, 2001, or, in the alternative, on December 3, 2001. As a result, defendant's April 12, 2002, notice of appeal was untimely. For the reasons discussed below, we agree with plaintiff that this court lacks subject matter jurisdiction to consider defendant's appeal.

## ANALYSIS

Initially, we must determine whether this court has subject matter jurisdiction to review defendant's appeal. To do so, we first consider the finality of the trial court's September 20 order. We will then consider the effect of plaintiff's motion for further relief on the finality of that order as well as the nature of the December 3 order granting the motion.

■ It is well settled that this court will not be invested with subject matter jurisdiction by a notice of appeal which is untimely. See *Childers v. Kruse*, 297 Ill. App. 3d 70, 73, 696 N.E.2d 1253, 1255 (1998). Under Supreme Court Rule 301, a final judgment in a civil case is immediately appealable as of right. 155 Ill. 2d R. 301. In this regard, Rule 303 requires that a notice of appeal must be filed within 30 days of the final judgment appealed from or, "if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending post-judgment motion." 155 Ill. 2d R. 303(a)(1). According to section 2—1203 of the Illinois Code of Civil Procedure, only motions for rehearing, retrial, modification of the judgment, or vacation of the judgment qualify as posttrial motions directed against the judgment,

which extend the 30-day deadline for filing a notice of appeal. 735 ILCS 5/2—1203 (West 2000).

■ A final judgment is one that disposes of the rights of the parties with regard to the entire controversy or a definite and separate part thereof. *Gibson v. Belvidere National Bank & Trust Co.*, 326 Ill. App. 3d 45, 48, 759 N.E.2d 991, 994 (2001). Such a judgment is not a final determination of the rights of the parties with respect to the entire subject matter of the litigation, but only as to their rights in the particular cause of action raised in the pleadings. *Physicians Insurance Exchange v. Jennings*, 316 Ill. App. 3d 443, 455, 736 N.E.2d 179, 188-89 (2000), quoting *Mutual Reserve Fund Life Ass'n v. Smith*, 169 Ill. 264, 265, 48 N.E. 208, 209 (1897). A judgment "is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with execution of the judgment." *In re Guzik*, 249 Ill. App. 3d 95, 98, 617 N.E.2d 1322, 1325 (1993). Judgment is not final, nor immediately appealable, where the court reserves an issue for further consideration or otherwise manifests an intention to retain jurisdiction for the entry of a further order. See *In re Guzik*, 249 Ill. App. 3d at 98, 617 N.E.2d at 1325. Except as provided under Supreme Court Rule 304(b), where an order disposes of fewer than all of the parties or claims, an appeal may only be taken from a final judgment regarding the disposed party or claim where the court makes a finding that there is no just reason for delaying enforcement or appeal. 155 Ill. 2d Rs. 304(a), (b). Such an appeal must be taken within 30 days of the entry of Rule 304 findings. 155 Ill. 2d R. 304.

■ Generally, an order for specific performance becomes final and appealable immediately following its issuance by the court. See *Bond Drug Co. of Illinois v. Amoco Oil Co.*, 323 Ill. App. 3d 190, 195, 198-99, 751 N.E.2d 586, 591, 594 (2001) (appeal considered by reviewing court where filed within 30 days of motion to reconsider order for specific performance, but before execution of the order); *Douglas Theater Corp. v. Chicago Title & Trust Co.*, 210 Ill. App. 3d 301, 307-08, 569 N.E.2d 88, 91 (1991); *Djomlija v. Urban*, 107 Ill. App. 3d 960, 963, 438 N.E.2d 558, 560-61 (1982). After such an order for specific performance has been entered, an appellee may file a motion to stay enforcement of the judgment pending appeal. See, *e.g.*, *Djomlija*, 107 Ill. App. 3d at 965-66, 438 N.E.2d at 562. Likewise, finality attaches to a declaratory judgment on the date judgment is entered, rather than on any date of enforcement specified in the order. See 735 ILCS 5/2—701(a) (West 2000); see also *Physicians Insurance Exchange*, 316 Ill. App. 3d at 452, 736 N.E.2d at 186-87.

■ There can be little question that the September 20 order in this case invoked finality pursuant to Supreme Court Rules 301 and 303,

and did not require Rule 304(a) certification. The order fixed absolutely the rights of the parties brought into question in each of the claims raised in plaintiff's two-count complaint and in defendant's counterclaim. In count I of her complaint, plaintiff specifically requested a declaration of the purchase price of the property as calculated under paragraph 33 of the original lease. In accordance with this request, the court declared the price under the contract to be $158,734.60. Count II requested an order for specific performance for the conveyance of the property. In the September 20 order, the court ordered defendant to accept tender of the purchase price by November 5, 2001, with closing to occur soon thereafter. In his counterclaim, defendant requested past-rent due. In response, the court ordered the declared purchase price increased by the rent due to defendant equaling $21,350. The court further provided for the continued payment of rent. No issues raised in the pleadings were left open or held over by the court and nothing remained except execution of the court's judgment. The judgment was therefore final and appealable as of the date of its entry.

Defendant urged during oral argument before this court that an order for specific performance, as requested in count II of plaintiff's complaint, does not achieve finality under Rules 301 and 303 until after the date of its "enforcement," which in this case was November 5, 2001. We find no case law supporting this proposition and defendant has provided us with none. To the contrary, as previously stated, there is ample precedent demonstrating that the requisite finality for purposes of filing a notice of appeal is achieved when the order for specific performance is granted and not on the arrival of the date set for its enforcement or execution. See generally *Bond Drug Co. of Illinois*, 323 Ill. App. 3d at 198-99, 751 N.E.2d at 594 (within 30 days of the trial court's order of specific performance, the defendant filed a motion for reconsideration, then appealed prior to execution of the order); *Douglas Theater Corp.*, 210 Ill. App. 3d at 308, 569 N.E.2d at 91 (notice of appeal filed within 30 days of the modified order for specific performance); *Djomlija*, 107 Ill. App. 3d at 963, 438 N.E.2d at 560-61 (notice of appeal filed within 30 days following order for specific performance, but before execution of the order for specific performance); see also *In re Guzik*, 249 Ill. App. 3d at 98, 617 N.E.2d at 1325 (a judgment is final where it determines the cause of action on its merits and, following affirmance by the reviewing court, the only thing remaining is its enforcement). Therefore, it would appear that the 30-day window for filing a notice of appeal begins to run as of the date of the order rather than the date of enforcement, and we find no basis upon which to urge that somehow the 30 days is tolled by the

date set for enforcement in the order compelling specific enforcement. Consequently, a notice of appeal filed within 30 days of the order is timely and does not have to wait to achieve finality until after the order's enforcement.

Likewise, finality attaches to a declaratory judgment on the date that judgment is entered. See *Physicians Insurance Exchange*, 316 Ill. App. 3d at 452, 736 N.E.2d at 186-87 (notice of appeal untimely where not filed within 30 days of issuance of declaratory order and no post-trial motions were filed). The statute allowing for such relief provides for the finality of declaratory judgments within its own language. Section 2—701 of the Code states that a court may make a binding declaration of rights, having the force of a final judgment, whether or not any consequential relief is or could be claimed. 735 ILCS 5/2—701(a) (West 2000). Such declarations may include the determination of the construction of a contract or other written instrument, and a declaration of the parties' rights. 735 ILCS 5/2—701(a) (West 2000).

The case of *In re Guzik*, 249 Ill. App. 3d 95, 617 N.E.2d 1322 (1993), upon which defendant relies is inapposite. In *Guzik*, the trial court determined that the respondent was subject to involuntary commitment due to a mental illness; however, the court continued the hearing for involuntary admission because no social assessment report or treatment plan had been presented at the initial hearing. The court specifically stated it would enter a "final order" of commitment at the next court date after the report and plan had been reviewed. *Guzik*, 249 Ill. App. 3d at 96, 617 N.E.2d at 1323. The respondent then filed a notice of appeal after the initial hearing and before the date set for the continuance. In finding that it lacked jurisdiction to consider the respondent's appeal, the reviewing court found that "the trial court's order clearly reserved issues for further consideration and stated that it would enter a 'final order' of commitment" on a later date. *Guzik*, 249 Ill. App. 3d at 98, 617 N.E.2d at 1325. Therefore, the order was not final and appealable. *Guzik*, 249 Ill. App. 3d at 98, 617 N.E.2d at 1325.

Unlike *Guzik*, however, the court in this case expressed no intention to retain jurisdiction over the cause of action. The court determined the rights of the parties on all issues raised in the pleadings. The hearing was not continued for consideration of additional issues, nor did the court overtly indicate any intent to retain jurisdiction, as it clearly did in *Guzik*. In fact, defendant's apparent assertion that there is an implicit retention of jurisdiction where an order has been entered, but not enforced, contradicts existing case law. As previously stated, *Bond, Douglas Theater Corp.*, and *Djomlija* all provide that a notice of appeal is timely where it is filed within 30 days of an

order for specific enforcement, but before execution of the order or the date set for such execution. The message of these cases then is that, although a circuit court always implicitly retains jurisdiction to enforce its orders, the time gap between the order and its enforcement does not affect the finality of the order for purposes of appealability. See also *Village of Gilberts v. Holiday Park Corp.*, 150 Ill. App. 3d 932, 936-37, 502 N.E.2d 378, 380 (1986) (court had jurisdiction to enter an order more than one year after entry of the original order, which enforced the original order, even though the original order was final and appealable). In other words, such retention does not toll the 30-day window within which notice of appeal must be filed.

Therefore, because specific performance and declaratory judgments may be final and appealable at issuance and the trial court in this case finally determined the rights of the parties as raised in the pleadings without any indication of an intent to retain jurisdiction of the cause of action, we conclude that the September 20 order was final and appealable.

Defendant next asserts, as an alternative argument, that if the September 20 order was final and appealable, plaintiff's November 1 motion for further relief was an untimely posttrial motion over which the trial court lacked jurisdiction. Therefore, defendant contends that the trial court did not have subject matter jurisdiction to enter the December 3 order, which, in addition to repeating the judgment of September 20, for the first time ordered defendant to satisfy the outstanding mortgage with Washington Mutual. Plaintiff responds that the petition was not a posttrial motion because it was filed pursuant to section 2—701(c) of the Code, which allows for further relief following a declaration of rights.

Again, section 2—701(a) of the Code provides that a declaration of rights has the force of a final judgment whether or not consequential relief is or could be claimed. 735 ILCS 5/2—701(a) (West 2000). Section 2—701(c) then provides:

"If further relief based upon a declaration of right becomes necessary or proper after the declaration has been made, application may be made by petition to any court having jurisdiction for an order directed to any party or parties whose rights have been determined by the declaration to show cause why the further relief should not be granted forthwith, upon reasonable notice prescribed by the court in its order." 735 ILCS 5/2—701(c) (West 2002).

Read in conjunction, these provisions indicate that consequential or incidental relief, not previously requested, but based on the rights previously determined in the initial declaration, may be claimed and obtained following the entry of a final and appealable declaratory

order. See *Burgard v. Mascoutah Lumber Co.*, 6 Ill. App. 2d 210, 219, 127 N.E.2d 464, 468 (1955). However, such a motion requesting further relief does not constitute a posttrial motion within the meaning of Supreme Court Rule 303(a)(1) and section 2—1203 of the Code because it is not directed against the original judgment, but is incidental to that judgment. See, *e.g., Burnidge Corp. v. Stelford*, 309 Ill. App. 3d 576, 580, 723 N.E.2d 394, 397 (2000). Therefore, while it appears from section 2—701 that the court will retain jurisdiction to entertain a request for further relief after the initial declaration without any time limitation, that retention of jurisdiction does not delay or postpone the finality of the issues originally decided so as to render the original decision nonfinal and nonappealable. See *Myers v. Mundelein College*, 331 Ill. App. 3d 710, 712, 771 N.E.2d 1113, 1114 (2002) (request for further relief in the form of monetary damages proper even though filed approximately six months after initial declaratory judgment entered); see also *Americana Nursing Homes, Inc. v. City of Rockford*, 53 Ill. App. 2d 447, 450-51, 202 N.E.2d 671, 673-74 (1964) (trial court had jurisdiction over petition filed 14 months after the entry of a final declaratory order where the relief sought was in furtherance of the original declaration of rights). Accordingly, the decree issuing the original declaratory judgment and order for specific performance became final on September 20, and the 30-day window within which defendant was required to appeal expired on October 20. Nevertheless, the trial court retained jurisdiction to consider the petition for further relief and provide the additional relief regarding payment of the mortgage held by Washington Mutual.

■ Moreover, even if the request for further relief was an untimely posttrial motion and the circuit court lacked jurisdiction to consider the motion, defendant is precluded from arguing the December 3 order was void. Although we acknowledge that a petition attacking a judgment as void may be brought at any time, the doctrine of revestment allows litigants to "revest a court *** with both personal and subject matter jurisdiction over the particular cause after the 30-day period following final judgment during which post-judgment motions must ordinarily be filed." *People v. Kaeding*, 98 Ill. 2d 237, 240, 456 N.E.2d 11, 14 (1983). The elements essential to revesting the court with jurisdiction are "(1) the active participation by the parties without objection (2) in further proceedings inconsistent with the prior order." *Ridgely v. Central Pipe Line Co.*, 409 Ill. 46, 50, 97 N.E.2d 817, 821 (1951); *Kaeding*, 98 Ill. 2d at 241, 456 N.E.2d at 14. The parties' conduct is inconsistent with a prior order if the conduct reasonably can be construed as an indication that the parties do not view the prior order as final and binding. *In re Marriage of Adamson*, 308 Ill. App. 3d 759, 766, 721 N.E.2d 166, 174 (1999).

■ In this case, defendant actively participated in the proceedings regarding plaintiff's petition for further relief. He filed a written response to plaintiff's petition on November 13, 2001, and, according to the transcript of the hearing, his attorney argued the merits of the petition at length before the court on November 16, 2001. Defendant never raised the issue of jurisdiction, neither in his written response nor orally before the court. Furthermore, defendant's conduct was inconsistent with his present theory that the September 20 judgment caused the circuit court to lose jurisdiction over the cause. As stated, defendant participated in the proceedings and did not object based on jurisdiction, thereby treating the September 20 order as nonfinal and nonappealable and rendering the December 4 order controlling. As a result, defendant's participation in the proceedings would have served to revest the trial court with jurisdiction to consider the petition had it lost jurisdiction prior to that time. See *Village of Gilberts*, 150 Ill. App. 3d at 937, 502 N.E.2d at 381.

Even if the September 20 order was not in itself final and was superceded by the December 3 order, there would be no basis to contest the finality of the December order, which merely reiterated the September order and provided the incidental relief sought by plaintiff. See *Kaeding*, 98 Ill. 2d at 242, 456 N.E.2d at 14 (court's order which reaffirmed original order was final where it fully adjudicated the rights of the parties). Therefore, the 30-day period within which to appeal the December order began upon that order's issuance and the notice of appeal filed by defendant in March would be untimely even with respect to the December order.

Furthermore, plaintiff's motion for a rule to show cause, which was filed in February and requested sanctions, did not retroactively disturb the finality of the December 3 order so as to abrogate the jurisdiction of this court over the cause of action. See *Hartford Fire Insurance Co. v. Whitehall Convalescent & Nursing Home, Inc.*, 321 Ill. App. 3d 879, 887, 748 N.E.2d 674, 681 (2001) (application for deposition cost found to be incidental to merits of underlying cause of action and therefore could be considered by the trial court after the filing of a notice of appeal in original cause); *Physicians Insurance Exchange*, 316 Ill. App. 3d at 451-52, 736 N.E.2d at 186-87 (motion for deposition costs, not raised in the original cause of action, was supplemental to the merits of that action and had no bearing on the effect or finality of the original declaratory judgment order); *Mitchell v. Atwood Enterprises, Inc.*, 253 Ill. App. 3d 475, 478, 624 N.E.2d 878, 881 (1993) (appellate court lacked jurisdiction over order determining collateral matter of costs where a second notice of appeal was not filed); *Town of Libertyville v. Bank of Waukegan*, 152 Ill. App. 3d 1066,

1073, 504 N.E.2d 1305, 1310 (1987) (an application for fees and costs may be brought at any time where it is outside the issues in the underlying judgment and the statute sets no time limit for seeking the expenses).

Although there is seeming contrary *dicta* in *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 640 N.E.2d 1313 (1994), that language should not be read to permit the revocation of this court's jurisdiction where sanctions are requested as the result of actions occurring after a final judgment, particularly where those actions involve a party's failure to comply with an order of performance. In *Prince*, the fees requested were part of the original judgment and involved the same conduct from which that action arose. In this case, the request for sanctions arose out of defendant's alleged actions subsequent to both judgments wherein he refused to comply with the court's orders. Because the gap between the entry of a judgment and its enforcement can be unlimited in time, to permit a cause of action that arises in relation to that enforcement, long after judgment has been entered, to retroactively destroy this court's jurisdiction over the original judgment would create anomalous situations. The time lag between the entry of an order and its enforcement can involve multiple years, by which time the original judgment may have already been appealed and resolved. It would be anomalous to then allow the parties to revoke the reviewing court's jurisdiction and invalidate its decision by filing a motion for sanctions long after finality has been achieved. Therefore, a motion for sanctions arising out of subsequent conduct, such as the failure to comply with a court order, cannot render the original order nonfinal and nonappealable, and it did not do so in this case.

■ Finally, although defendant argues that the trial court rejected plaintiff's contention that the September and December orders were final and entered the final and appealable order in March pursuant to his request, we note that the record does not contain a transcript of the hearing on this motion. Because it is appellant's duty to present a complete record on appeal, any doubts arising from an incomplete record will be resolved against him. *Yazzin v. Meadox Surgimed, Inc.*, 224 Ill. App. 3d 288, 291, 586 N.E.2d 533, 535 (1991). As a result, any argument before the trial court or any reasoning given by that court as to the nonfinal nature of the previous orders cannot be considered in this appeal. *Yazzin*, 224 Ill. App. 3d at 291, 586 N.E.2d at 535. Even if the record were complete, it is well settled that a trial court's designation of an order as final and appealable does not in itself render an order final and appealable, nor does it render a final order, issued previously, nonfinal. See *In re Marriage of Hillinger*, 146 Ill. App. 3d 549, 554, 497 N.E.2d 112, 235 (1986).

## CONCLUSION

Accordingly, the cause of action is dismissed for lack of jurisdiction.

Dismissed.

O'MALLEY, P.J., and McBRIDE, J., concur.