2022 IL App (1st) 200555-U

No. 1-20-0555

Order filed March 24, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| CITY OF MARKHAM, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 M6 012211 |
| | ) | |
| ANDREA BILLUPS-DRYER, | ) | Honorable |
| | ) | Michael B. Barrett, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Martin concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The trial court's issuance of a judicial deed to the City of Markham after finding the property to be abandoned is affirmed.

¶ 2     In this appeal, defendant Andrea Billups-Dryer[1] (Billups-Dryer) challenges the trial court's

issuance of a judicial deed for property identified by property index number 28-23-427-037-0000

---

[1] We note that Billups-Dryer is the only defendant who is a party to this appeal.

in Markham, Illinois[2] (the property), after it found the property to be abandoned under the Illinois Municipal Code. 65 ILCS 5/11-31-1(d) (West 2018).

¶ 3    For the reasons that follow, we affirm the trial court's judgment.[3]

¶ 4                                    I. BACKGROUND

¶ 5    This case began on October 26, 2018, when petitioner, City of Markham (the City), filed a "Petition to Declare Property Abandoned."[4] The petition named as respondents to the action Michael A. Skirmont, Argent Mortgage Company, and "Unknown Owners, Unknown Occupants, and Non-Record Claimants." Based on records kept by the Recorder of Deeds, the petition alleged that Michael A. Skirmont owned the property and Kiiyana Heath claimed to have a power of attorney for the property. The petition further alleged that there might be unknown owners and non-record claimants with an interest in the property and unknown individuals occupying the property who lacked legal possession.

¶ 6    The petition averred that the City had determined that the building was dangerous, unsafe, a public hazard, and a nuisance. The petition alleged that the property was in a state of constant

---

[2] The City's pleadings and the judicial deed describe the property as 16625 Hillcrest Avenue, while Billups-Dryer describes it as 16625 Hillcrest Drive. The Cook County Assessor's Office lists the property as 16625 Hillcrest Drive. https://cookcountyassessor.com. We may take judicial notice of such publicly-held records. *Ashley v. Person*, 339 Ill. App. 3d 733, 740 (2003). There is no apparent dispute as to the identity of the property at issue.

[3] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[4] We also take judicial notice of the City's petition and motion for injunctive relief where both are public records maintained on the website for the Clerk of the Circuit Court of Cook County. https://www.cookcountyclerkofcourt.org.

and continuous disrepair, was a menace to the public health, safety, and welfare, and violated multiple provisions of both the Illinois Municipal Code and the City's Municipal Code.

¶ 7    The petition requested:

"WHEREFORE, Petitioner the City of Markham prays as follows:

A. The Court to declare the property abandoned pursuant to the Illinois Municipal Code 65 ILCS 5/11-31-1(d);

B. The Court to issue the City of Markham a judicial deed pursuant to the Illinois Municipal Code 65 ILCS 5/11-31-1(d); and

C. For such other and further relief as may be necessary in the premises and which the court shall deem necessary."

¶ 8    On September 11, 2019, the City filed a motion for injunctive relief against "Michael A. Skirmont, Argent Mortgage Company, Kiiyana Heath, Andrea Billups Dryer, Andrea Billups-Dryer, Andrea Billups, Andrea E. Billups, Angelic Home of Hope, Ralpheal Valentine, Kenneth McDonald, Calvin Riles, Charles Dryer, Unknown Occupants, and non-record Claimants."

¶ 9    The City's motion sought: (1) to enjoin named respondents and occupants Jeremiah Mawuli Mack and Kimberly D. Allen from occupying the property until respondents obtained a certificate of occupancy from the City and the entry of a final disposition of the case; (2) attorney's fees and court costs incurred by the City in filing this injunction; and (3) other relief deemed necessary by the court.

¶ 10    The City's motion alleged that while Billups-Dryer claimed that Michael Skirmont had transferred the property to her and she was its rightful owner, the City had not issued a certificate of occupancy or a water stamp to permit the property to be transferred.

¶ 11    The City maintained that an injunction was necessary to prevent the occupation of the premises that could result in irreparable harm to the public health, safety, and welfare.

¶ 12    Billups-Dryer opposed the City's motion, claiming to be the rightful owner of the property based on her possession of a quitclaim deed allegedly signed by the property owner of record, Michael A. Skirmont.

¶ 13    On October 9, 2019, the trial court continued the City's motion for injunctive relief to October 16, 2019, and allowed Billups-Dryer to file a response to the City's motion. The court conducted a hearing on the City's motion on October 16, 2019. Billups-Dryer proceeded *pro se*.

¶ 14    The City informed the trial court that Billups-Dryer had filed a motion for a temporary restraining order and to transfer this case to federal court for the Northern District of Illinois. The parties agreed that both motions were dismissed by the federal district court earlier that day when Billups-Dryer was late for court.

¶ 15    The City called Markham Deputy Chief Jack Genius, who testified that the City had deemed the property abandoned and posted orange stickers or placards that indicated the property was uninhabitable. A substantial overdue water bill resulted in the City turning off the water to the property. The City took the extraordinary measure of digging up the yard with a backhoe and implanting a false "B-Box" to disallow anyone with a water stick or water key from turning the water back on.

¶ 16    On August 25, 2019, Deputy Chief Genius received a complaint from a resident who had called the police to report that people were on the property. Police officers went to the property in response to an earlier call but left the property without doing anything to remediate the situation.

¶ 17    Deputy Chief Genius called the patrol officer on duty to discuss the complaint. He learned that the patrol officer and his partner went to the residence and spoke with a young couple who had just moved in. The officers believed that the couple were lawfully on the premises and left without taking any action.

¶ 18    Deputy Chief Genius then arranged to meet the officers at the property, where he saw Mack and Allen in the house. They informed him that they were originally from Arizona and were moving in and cleaning up. When Deputy Chief Genius told them they could not occupy the property, they refused to leave and became belligerent. They closed the doors and spoke with the officers through a closed door.

¶ 19    When Billups-Dryer pulled up to the property, Mack and Allen became more belligerent. Billups-Dryer told the officers that she owned the property and that the couple had not moved in but were just cleaning up.

¶ 20    The police officers issued tickets to Mack and Allen. Based on his experience, Deputy Chief Genius determined that it was better to issue citations and leave the scene rather than arrest anyone.

¶ 21    Deputy Chief Genius testified to a second incident on October 8, 2019, when another citation was written for a person found to be occupying the property. On that date, Deputy Chief

Genius entered the property, observed that the water was still turned off, and saw food in the refrigerator.

¶ 22    Deputy Chief Genius explained that the City had safety concerns about people residing in the property because it was unsanitary due to the lack of running water. Human waste caused rats and infestations and was unhealthy and illegal. The condition of the property could also potentially affect nearby properties. Deputy Chief Genius testified that he needed a court order to remedy the situation.

¶ 23    On cross-examination, Deputy Chief Genius testified that Billups-Dryer showed her paperwork to Officer Brazil[5] when she arrived at the residence on August 25, 2019. The individual who was issued a citation on October 8, 2019, was handcuffed and put in the back of a police vehicle.[6] Deputy Chief Genius denied knowing about the existence of a federal lawsuit against the City or being in housing court when Billups-Dryer was forced out of the courtroom. He denied that he had entered the property unlawfully.

¶ 24    On redirect examination, Deputy Chief Genius clarified that it is police procedure to ensure that no one is occupying a house with an orange placard. The police entered unsecured vacant homes to ensure they were safe and that no trespassers were inside. In his experience, sexual offenders will occupy vacant houses, people are murdered in vacant or abandoned homes, and fires are set inside them when the weather turns cold.

---

[5] The record only identifies Officer Brazil's last name.
[6] The record does not reflect the identity of the person that was put in the back of the police vehicle.

¶ 25    Billups-Dryer testified that she owned the property after Mr. Skirmont gave her and Ralpheal Valentine possession of it. Skirmont signed a quitclaim deed to the property. The notarized quitclaim deed, dated May 23, 2019, purported to bear the signature of Michael Skirmont for the property at 16625 Hillcrest Drive in Markham, Illinois.

¶ 26    Billups-Dryer admitted that the deed was unrecorded because she could not acquire a transfer stamp from the City to enable her to record it.  Billups-Dryer testified that she repeatedly went to the City to learn what fines needed to be paid to obtain a transfer stamp on the property. The City refused her requests, and the police "strong-armed" her and forced her to leave the housing department when she refused to accept the City's denial of her requests. Billups-Dryer alleged that the City prevented her from taking the necessary steps to record the deed to the property.

¶ 27    Billups-Dryer denied that anyone was occupying the property and accused the City of "outright stealing the property – this is the first step they're trying to take. ***" She alleged that the City was trying to violate her constitutional rights. Billups-Dryer disagreed that a lack of running water made the property unsafe. Moreover, issuing an injunction would make it impossible for her to fix the property. She also alleged that the police had illegally searched her home and sought to have it deemed abandoned after she posted a notice evidencing her intent to claim it.

¶ 28    Concerning the August 25, 2019 incident, Billups-Dryer testified that the police towed the van of the two individuals who were working for her in order to make some money. They did not have anywhere to go, so she allowed them to stay at the property for a couple of days so that they could make some money "to be able to go back to wherever." Billups-Dryer did not rent the

property to them. She testified, "[t]hey're trying to steal the property, and I can't even maintain it or fix it up because every time I have somebody go out there and do it, the police come out and run them away, threaten to arrest them, search them, put them in handcuffs and put them in the back of a vehicle."

¶ 29 Billups-Dryer had no objection to the entry of an injunction prohibiting anyone from living in the property. However, Billups-Dryer argued that she should be able to enter the property to maintain its condition.

¶ 30 Billups-Dryer also called Ralpheal Valentine to testify. Valentine testified that the police had come to the property when he was working on it and cleaning it up. He told the police that he was not living at the property. The police asked him to step outside and questioned how many people were inside. Valentine told them that two other workers were inside. The police told everyone to step outside and informed them that they were prohibited from being inside the home unless they had a piece of paper permitting them to do so.

¶ 31 Another officer went inside the house and started walking around. When he came back outside, he told everyone they needed to leave the premises. When Valentine asked him why they could not continue their work, the officer gave them a choice of leaving or staying and being "locked up."

¶ 32 The three chose to leave. Since that encounter, Valentine testified that "it's just been nonstop." The City came out with a tractor, knocked over the bushes, and dug up a water pipe based on their claim that the water had been illegally turned back on. Valentine denied that this claim was true.

¶ 33    After the water was shut off, the City started "coming with the orange stickers, the non-occupancy or uninhabitable stickers." Then the City boarded up the property. When Billups-Dryer alleged that the City's actions were illegal, the City retaliated by removing the boards, busting out windows, and tearing the screen doors off the house.

¶ 34    On cross-examination, Valentine testified that permits were not required for the work that he was doing on the property. He knew this because he was in real estate. However, he never looked at ordinances from the building department to find out what work required a permit.

¶ 35    Billups-Dryer also presented the trial court with photographs taken on September 17, 2018, that purported to show the property's condition.

¶ 36    The court indicated an unresolved issue remained as to whether the conveyance was legally enforceable even though it was not recorded. However, the court granted the City's motion to enjoin the property from being occupied until a certificate of occupancy was obtained from the City or the entry of a final disposition of the case. The injunction was entered against Jeremiah Mawuli Mack, Kimberly D. Allen, and the other respondents previously named in the motion, including Billups-Dryer. However, Billups-Dryer was allowed to enter the premises between 5 and 7 p.m. on October 20, 2019, to inspect and take photographs or videotape the property. The trial court clarified that the injunction did not prohibit lawn or outdoor maintenance of the property not requiring a permit. The matter was continued to October 28, 2019, for a hearing on the remaining matters.

¶ 37    On October 28, 2019, the court commenced what Billups-Dryer characterizes as a five-day hearing on the City's underlying petition. Billups-Dryer has not included the report of proceedings from that proceeding in the record on appeal.

¶ 38    The court's five-page written order dated November 18, 2019, following that hearing is contained in the common-law record. This order, which will be discussed in greater detail herein, determined that the City had met the statutory requirements to show that the property was abandoned:

> "The uncontroverted testimony and evidence conclude that the property tax bills and water bills are delinquent and / or outstanding for 2 or more years:  the property is unoccupied by persons legally in possession; and the property contains a dangerous or unsafe building (i.e., no water)."

¶ 39    The court entered the following order:

> "Therefore, the City is ordered to send notice in person or by certified or registered mail to all persons having an interest of record in the property, including tax purchasers and beneficial owners of any Illinois land trust having title to the property, stating that title to the property will be transferred to the municipality unless, within 30 days of the notice, the owner of record or any other person having an interest in the property files with the court a request to demolish the dangerous or unsafe building or to put the building in safe condition, or unless the owner of record enters an appearance and proves that the owner does not intend to abandon the property."

¶ 40     The matter was continued to December 23, 2019, for status.

¶ 41     On November 19, the City sent, via certified mail, a "30 Day Notice to Owner of Record or any Other Person Having Interest in the Property" and a copy of the trial court's November 18, 2019, written order to all of those who were listed on a service list. The service list named all of those named as respondents in the City's September 11, 2019, motion for injunctive relief, including Billups-Dryer, and added the Cook County Land Bank Authority as a respondent.

¶ 42     The notice apprised respondents that unless within 30 days they filed a request to demolish the dangerous or unsafe building or to put the building in safe condition, or unless the owner of record entered an appearance and proved that they did not intend to abandon the property, that the municipality may petition the court to issue a judicial deed for the property to the municipality.

¶ 43     On December 2, 2019, Billups-Dryer filed a "Motion to Reconsider and for New Trial," in which she maintained that plaintiff failed to prove the necessary elements of their claim that the property was abandoned and that she proved that she was the rightful owner of the property. Billups-Dryer supported her 12-page motion with affidavits authored by her and Michael Skirmont along with the quitclaim deed, and other documents, including an "Affidavit in Support of Motion to Recuse Judge M. Barrett."

¶ 44     On December 23, 2019, Billups-Dryer then filed a "Motion to Recuse Judge Michael Barrett" in which she alleged, *inter alia*, that the court's November 18, 2019, order was in error where the City failed to prove that the building was dangerous and unsafe and where Billups-Dryer proved that she was the legal owner of the property.

¶ 45    On December 23, 2019, Billups-Dryer's motion seeking recusal of Judge Barrett was heard by Judge Carrie E. Hamilton. Judge Hamilton denied Billups-Dryer's motion and transferred the matter back to Judge Barrett.

¶ 46    On December 23, 2019, Billups-Dryer also filed a "Motion to Vacate Order Striking Motion to Reconsider and Motion for New Trial Due to Lack of Notice" based on her apparent belief that on December 17, 2019, the trial court had struck her December 2 motion to reconsider.[7]

¶ 47    On December 28, 2019, the trial court denied Billups-Dryer's motion to reconsider after noting that no prior ruling had been made on such motion. The trial court continued this matter to January 15, 2019, for the Cook County Land Bank Authority to file an appearance or an answer.

¶ 48    On January 15, 2020, the trial court entered an order indicating that the Cook County Land Bank Authority had entered neither an answer nor an appearance and continuing the matter for entry of a judicial deed on February 24, 2020. The court ordered the City to issue notice of the order to all parties.

¶ 49    The City mailed a copy of the court's January 15, 2020 order to all parties named on the service list, including Billups-Dryer.

¶ 50    On January 22, 2020, Billups-Dryer filed a "Motion to Vacate Void Judgment" attacking the trial court's January 15, 2020 order. Her motion was set to be heard on February 13, 2020.

---

[7] In actuality, the trial court did not rule on the motion to reconsider on December 17, 2019, but entered an order acknowledging that the City had served the Cook County Land Bank Authority with notice of its November 18, 2019 order.

¶ 51    On February 13, 2020, Billups-Dryer appeared before Judge Thomas J. Condon. Judge Condon declined to rule on Billups-Dryer's motion but continued it to February 24, 2020, to be heard by Judge Barrett, noting that this was the same date scheduled for entry of the judicial deed.

¶ 52    On February 24, 2020, the trial court entered an order which indicated that Billups-Dryer had failed to appear. The court indicated that it: (1) would enter an order issuing a judicial deed to the City; (2) denied Billups-Dryer's motion to vacate a void judgment; (3) gave Billups-Dryer leave to provide a list of any items she wished to remove from the property; and (4) gave Billups-Dryer leave to enter the property with a police escort to remove the items that she had listed.

¶ 53    The trial court then issued the judicial deed, which states in relevant part:

> "On the 24th day of February 2020, ***, a court order was entered which declared the below[-]described property abandoned and provided 30 days for the Respondents to file an Appearance or Answer and neither was filed within that time period by any Respondents. Therefore, in accordance with Illinois Municipal Code 65 ICS 5/11-31-1(d), at the request of the City of Markham, the Court has issued this judicial deed for the below[-]described property to the City of Markham."

¶ 54    On March 17, 2020, Billups-Dryer filed a "Motion to Recall Motion to Vacate VOID Judgment / Motion to Reconsider 2/24/2020 Ruling to Issue Judicial Deed." In it, she alleged:

> "Andrea Billups Dryer filed her Motion to Vacate Void [Judgement], appeared at the February 13, [2020] court date. The motion was continued to February 24 [2020]. Defendant was unable to attend the [February 24, 2020] court date due to being very ill which lasted for weeks. March 17, [2020] Billups-Dryer

received the order dated 2/24/20 and an attachment dated 2/24/20. Stating she had 24 hours to remove her belongings. The 2/13/20 order gave defendant leave to remove all of her belongings with assistance from the police, which she was not able to remove due to illness. Andrea Billups-Dryer is requesting the court to recall her motion to vacate void [judgment] and to allow defendant the opportunity to present her motion and motion for reconsideration of the February 24, 2020 ruling to issue judicial deed due to plaintiff have not filed (sic) a valid cause of action which relief can be granted all of the elements were not met for required [*sic*] burden of proof."

¶ 55    On March 18, 2020, Billups-Dryer filed a notice of motion to present her motion to vacate on April 29, 2020, before Judge Barrett. The record does not indicate whether the trial court ever ruled on the motion.

¶ 56    On March 23, 2020, Billups-Dryer filed a notice of appeal from the trial court's February 24, 2020 order.

¶ 57                                II. ANALYSIS

¶ 58                    A. The Trial Court Properly Issued a Judicial Deed After
                          Finding the Subject Property to Be Abandoned

¶ 59    On appeal, Billups-Dryer attacks the issuance of the judicial deed based on her belief that the City failed to establish that the property was abandoned under Section 11-31-1(d) (West 2018) of the Municipal Code.

¶ 60    The City replies that we lack jurisdiction to consider this claim and that Billups-Dryer's failure to provide us with a complete record on appeal dictates that her claim must be rejected.

¶ 61    We begin with the question of jurisdiction.

¶ 62                    1. Jurisdiction Exists to Consider Appellant's Claim

¶ 63    "A final order has been defined as one that 'ascertains and fixes absolutely and finally the rights of the parties in the lawsuit.' " *Dilenbeck v. Dilenbeck-Brophy*, 2020 IL App (3d) 190541, ¶ 21 (citing *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982)). "A judgment is considered final 'if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof.' " *In re Curtis B.*, 203 Ill. 2d 53, 59 (2002) (citing *R.W. Dunteman Co., v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998)).

¶ 64    "An order of court which leaves a cause still pending and undecided is not a final order. [Citation.] Such an order is neither final nor appealable, despite the court's special finding that the order is final for purpose of appeal. [Citation.] Thus, the test of finality lies in the substance and not the form of the order. [Citation.]" *In re Guardianship of J.D.*, 376 Ill. App. 3d 673, 675 (2007), (citing *Pekin Insurance Co. v. Benson*, 306 Ill. App. 3d 367, 375 (1999)). A judgment is neither final nor immediately appealable where the court reserves an issue for further consideration. *In re Guzik*, 249 Ill. App. 3d 95, 98 (1993).

¶ 65    Section 2-701 of the Code of Civil Procedure (735 ILCS 5/2-701 (West 2018)), provides in pertinent part that:

>    "[t]he court may, in cases of actual controversy, make binding declarations
>    of rights, having the force of final judgments, whether or not any consequential
>    relief is or could be claimed, including the determination *** of the construction of

*** any deed, will, contract or other written instrument, and a declaration of the

rights of the parties interested."

¶ 66 Finality attaches to a declaratory judgment on the date judgment is entered. *Djikas v. Grafft*, 344 Ill. App. 3d 1, 10 (2003).

¶ 67 Whether we have jurisdiction over this matter depends on whether the trial court's November 18, 2019, ruling was a final judgment that was immediately appealable under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). Rule 301 provides that "every final judgment of a circuit court in a case is appealable as of right." Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). For the reasons that follow, we find that it was not.

¶ 68 From the outset, the City's petition relied on a single provision of the Municipal Code, Section 11-31-1(d), to obtain a declaration that the property was abandoned as well as the issuance of a judicial deed. This section of the Code provides:

"(d) In addition to any other remedy provided by law, the corporate

authorities of any municipality may petition the circuit court to have property

declared abandoned under this subsection (d) if:

(1) the property has been tax delinquent for 2 or more years or bills for water

service for the property have been outstanding for 2 or more years;

(2) the property is unoccupied by persons legally in possession; and

(3) the property's condition impairs public health, safety, or welfare for

reasons specified in the petition.

All persons having an interest of record in the property, including tax purchasers and beneficial owners of any Illinois land trust having title to the property, shall be named as defendants in the petition and shall be served with process. In addition, service shall be had under Section 2-206 of the Code of Civil Procedure as in other cases affecting property, including publication in a newspaper that is in circulation in the county in which the action is pending. At least 30 days prior to any declaration of abandonment, the municipality or its agent shall post a notice not less than 1 foot by 1 foot in size on the front of the subject building or property. The notice shall be dated as of the date of the posting and state that the municipality is seeking a declaration of abandonment for the property. The notice shall also include the case number for the underlying circuit court petition filed pursuant to this subsection and a notification that the owner should file an appearance in the matter if the property is not abandoned.

The municipality, however, may proceed under this subsection in a proceeding brought under subsection (a) or (b). Notice of the petition shall be served in person or by certified or registered mail on all persons who were served notice under subsection (a) or (b).

If the municipality proves that the conditions described in this subsection exist and (i) the owner of record of the property does not enter an appearance in the action, or, if title to the property is held by an Illinois land trust, if neither the owner of record nor the owner of the beneficial interest of the trust enters an appearance, or (ii) if the owner of record or the beneficiary of a land trust, if title

to the property is held by an Illinois land trust, enters an appearance and specifically waives his or her rights under this subsection (d), the court shall declare the property abandoned. Notwithstanding any waiver, the municipality may move to dismiss its petition at any time. In addition, any waiver in a proceeding under this subsection (d) does not serve as a waiver for any other proceeding under law or equity.

If that determination is made, notice shall be sent in person or by certified or registered mail to all persons having an interest of record in the property, including tax purchasers and beneficial owners of any Illinois land trust having title to the property, stating that title to the property will be transferred to the municipality unless, within 30 days of the notice, the owner of record or any other person having an interest in the property files with the court a request to demolish any or all dangerous or unsafe buildings or to put the building in safe condition, or unless the owner of record enters an appearance and proves that the owner does not intend to abandon the property.

If the owner of record enters an appearance in the action within the 30 day period but does not at that time file with the court a request to demolish the dangerous or unsafe building or to put the property in safe condition, or specifically waive his or her rights under this subsection (d), the court shall vacate its order declaring the property abandoned if it determines that the owner of record does not intend to abandon the property. In that case, the municipality may amend its complaint in order to initiate proceedings under subsection (a), or it

may request that the court order the owner to demolish buildings or repair the dangerous or unsafe conditions of the property alleged in the petition or seek the appointment of a receiver or other equitable relief to correct the conditions at the property. The powers and rights of a receiver appointed under this subsection (d) shall include all of the powers and rights of a receiver appointed under Section 11-31-2 of this Code.

If a request to demolish or repair a building or property is filed within the 30 day period, the court shall grant permission to the requesting party to demolish the building or repair the property within 60 days after the request is granted. An extension of that period for up to 60 additional days may be given for good cause. If more than one person with an interest in the property files a timely request, preference shall be given to the owner of record if the owner filed a request or, if the owner did not, the person with the lien or other interest of the highest priority.

If the requesting party (other than the owner of record) proves to the court that the building has been demolished or put in a safe condition in accordance with the local safety codes within the period of time granted by the court, the court shall issue a quitclaim judicial deed for the property to the requesting party, conveying only the interest of the owner of record, upon proof of payment to the municipality of all costs incurred by the municipality in connection with the action, including but not limited to court costs, attorney's fees, administrative costs, the costs, if any, associated with property maintenance, and receiver's certificates. The interest in the property so conveyed shall be subject to all liens

and encumbrances on the property. In addition, if the interest is conveyed to a person holding a certificate of purchase for the property under the Property Tax Code,[8] the conveyance shall be subject to the rights of redemption of all persons entitled to redeem under that Act, including the original owner of record. If the requesting party is the owner of record and proves to the court that the building has been demolished or put in a safe condition in accordance with the local safety codes within the period of time granted by the court, the court shall dismiss the proceeding under this subsection (d).

If the owner of record has not entered an appearance and proven that the owner did not intend to abandon the property, and if no person with an interest in the property files a timely request or if the requesting party fails to demolish the building or put the property in safe condition within the time specified by the court, the municipality may petition the court to issue a judicial deed for the property to the municipality or another governmental body designated by the municipality in the petition. A conveyance by judicial deed shall operate to extinguish all existing ownership interests in, liens on, and other interest in the property, including tax liens, and shall extinguish the rights and interests of any and all holders of a *bona fide* certificate of purchase of the property for delinquent taxes. Any such *bona fide* certificate of purchase holder shall be entitled to a sale in error as prescribed under Section 21-310 of the Property Tax Code." 65 ILCS 5/11-31-1 (West 2018).

¶ 69    We have set forth the entirety of Section 11-31-1(d) to highlight the fact that the plain language of the Code contemplates a process that follows an initial finding of abandonment and precedes the issuance of a judicial deed. Put differently, individuals with an interest in the property are at liberty to file a request to put the building in a safe condition within 30 days from the date of the preliminary finding of abandonment, in which case they would be granted a minimum of 60 days and a maximum of 120 days to make the necessary remediations. In sum, how this section of the Code is drafted does not support the City's claim that the initial finding of abandonment was a final appealable order.

¶ 70    The trial court's November 18, 2019 order reinforces the nonfinal nature of that judgment where the court indicated that its finding triggered application of the remainder of Section 11 and directly quoted from the Code. The trial court ruled that:

> "Therefore, the City is ordered to send notice in person or by certified or registered mail to all persons having an interest of record in the property, including tax purchasers and beneficial owners of any Illinois land trust having title to the property, stating that title to the property will be transferred to the municipality unless, within 30 days of the notice, the owner of record or any other person having an interest in the property files with the court a request to demolish the dangerous or unsafe building or to put the building in safe condition, or unless the owner of record enters an appearance and proves that the owner does not intend to abandon the property."

¶ 71    The City sent a copy of this order to Billups-Dryer and the other named respondents, along with a newly-named respondent, the Cook County Land Bank Authority, and its "30 Day Notice to Owner of Record or any Other Person Having Interest in the Property" reiterated the substance of the court's order.

¶ 72    If we had any remaining doubts as to whether the trial court's November 18, 2019 order constituted a final, appealable order, they would be quelled by the judicial deed itself. As referenced previously, the judicial deed states that the trial court found the property to be abandoned on February 24, 2020, the date that the deed was issued. Under the plain language of Section 11-31-1(d) "A conveyance by judicial deed shall operate to extinguish all existing ownership interests in, liens on, and other interest in the property, including tax liens, and shall extinguish the rights and interests of any and all holders of a bona fide certificate of purchase of the property for delinquent taxes. ***" Thus, it is the issuance of the judicial deed that extinguishes all other interests in the property. *In re County Treasurer*, 308 Ill. App. 3d 897, 899 (1999).

¶ 73    Based on the foregoing, we find that the trial court's November 18, 2019, was not a final appealable order because it did not dispose of the named respondents' rights generally or otherwise fix the parties' rights in this matter. Billups-Dryer filed a timely notice of appeal from the trial court's February 24, 2020 order extinguishing her rights in the property. Thus, we have jurisdiction over this matter pursuant to Supreme Court Rule 301.

¶ 74                    2. The Trial Court's Ruling Was Not in Error

¶ 75    Having determined that we have jurisdiction over this matter, we now turn to Billups-Dryer's claim that issuance of the judicial deed was in error where the City failed to establish that the property was abandoned.

¶ 76    We review the trial court's findings to ensure that they are supported by the evidence and are not against the manifest weight of the evidence. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 131 (2004). "A judgment is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the finding is unreasonable, arbitrary, or not based on the evidence presented." *In re Estate of Bennoon*, 2014 IL App (1st) 122224, ¶ 70. Applying this standard of review, we find that Billups-Dryer's claim fails.

¶ 77    We begin by noting that Billups-Dryer has failed to make the report of proceedings from the hearing at which the question of abandonment was fully litigated and large portions of the common law record a part of the record on appeal. For this reason, on January 11, 2021, the City moved to dismiss this appeal as violative of Illinois Supreme Court Rule 321 (eff. Oct. 1, 2021) and Illinois Supreme Court Rule 323 (eff. July 1, 2017). We denied the City's motion, indicating that such claim could be raised in the City's brief.

¶ 78    In *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14, we noted that "striking a brief or dismissing an appeal for failure to comply with supreme court rules is a harsh sanction." We note Billups-Dryer's *pro se* status both as a litigant in the trial court and before this court. Nevertheless, having previously placed Billups-Dryer on notice of the

- 23 -

City's objection to lack of a sufficient record, Billups-Dryer has not moved to supplement the record. The City has renewed its charge that the record in this case is insufficient. We agree.

¶ 79    Illinois Supreme Court Rule 321 provides:

"The record on appeal shall consist of the judgment appealed from, the notice of appeal, and the entire original common law record, unless the parties stipulate for, or the trial court, after notice and hearing, or the reviewing court, orders less. The common law record includes every document filed, judgment, and order entered and any exhibits offered and filed by any party. Upon motion the reviewing court may order that other exhibits be included in the record. The record on appeal shall also include any report of proceedings prepared in accordance with Rule 323. There is no distinction between the common law record and the report of proceedings for the purpose of determining what is properly before the reviewing court."

¶ 80    Illinois Supreme Court Rule 323 provides:

"A report of proceedings may include evidence, oral rulings of the trial judge, a brief statement of the trial judge of the reasons for his decision, and any other proceedings that the party submitting it desires to have incorporated in the record on appeal. The report of proceedings shall include all the evidence pertinent to the issues on appeal."

¶ 81    Our supreme court's rules are not "mere suggestions" but have the force of law. *In re Denzel W.*, 237 Ill. 2d 285, 294 (2010). As appellant, Billups-Dryer has the burden to provide this

court with a sufficiently complete record of proceedings at trial to support her claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984).

¶ 82    The failure to provide an adequate record on appeal triggers a presumption that the trial court's order conformed with the law and had a sufficient basis in fact. *Id.* at 392. We resolve any doubts that arise from the incompleteness of a record against the appellant. *Id.*

¶ 83    Thus, we review Billups-Dryer's claim of error based on what is before us: the trial court's extensive ruling after conducting a multi-day hearing on the City's petition.

¶ 84    Under Section 11-31-1(d) of the Code, the City was required to establish that: (1) the property was tax delinquent for two or more years or bills for water service for the property were outstanding for two or more years; (2) the property was unoccupied by persons legally in possession; and (3) the property's condition impaired public health, safety, or welfare for reasons specified in the petition. 65 ILCS 5/11-31-1(d) (West 2018). The trial court's order conclusively establishes that the City proved all three necessary criteria to its satisfaction to enable the court to make an initial finding of abandonment.

¶ 85    The court began by noting that the City called three witnesses at trial, Sandra Nelson, Melissa Vaught, and Roger Agpawa. Ms. Nelson, the fire safety inspector for the City's building department, testified that Michael A. Skirmont was the titled owner of record and that real estate taxes were delinquent from 2011 through 2017 and sold at a tax sale in 2019.

¶ 86    Ms. Vaught, the supervisor of the City's water department, testified that the water bills for the property were unpaid since 2016 and that after the City turned off the water, someone tampered with the "B-Box" to gain access to water for the property. The City removed the "B-Box." Since

2009 no permits had been issued for any type of work to be performed on the property. No occupancy permits had been issued for the property for over three years.

¶ 87 Mr. Agpawa testified that he is the Mayor of Markham, a lifelong resident of Markham, and familiar with the property. The City had received multiple complaints from neighbors regarding the property's condition. All of the complaints qualified as violations of Markham's nuisance ordinances.

¶ 88 The City also established that Billups-Dryer, the president of Angelic Home of Hope, an Illinois not-for-profit corporation, put a placard on a window of the property stating that the building had been vacant and abandoned for at least one year and setting forth conditions of the property that made it not fit for human habitation under applicable fire, building, and housing codes, and that created a public nuisance and a blight to the surrounding area.

¶ 89 Billups-Dryer had then filed a "Verified Petition for Temporary Possession Pursuant to the Abandoned Housing Rehabilitation Act." The verified pleading alleged that: (1) the property was unoccupied by those legally in possession for three years or more; (2) the condition of the property was a nuisance; (3) the property was tax delinquent for over one year, and bills for water service were outstanding, or public utilities were disconnected; (4) the property had a deteriorated roof, busted pipes, or debris within it or was unsecured; and (5) records from the Recorder of Deeds established Michael A. Skirmont to be the owner of the property.

¶ 90 According to Billups-Dryer, after she filed the verified petition, Mr. Skirmont quitclaimed his interest in the property to her. However, the court found that the documents relied on by Billups-Dryer:

"raised questions regarding their authenticity and effectiveness. For instance, the Court was presented with multiple powers of attorney which were either not signed by Skirmont, were not notarized; or purported to appoint [Billups-Dryer's] daughter as agent of Skirmont who then subsequently executed a deed of conveyance from Skirmont to [Billups-Dryer] pursuant to the power of attorney."

¶ 91    The court noted that Billups-Dryer testified that she attempted to record the quitclaim deed with the Cook County Recorder of Deeds, but that the office refused to file and record the deed because city transfer stamps were not affixed to it.

¶ 92    The court made a factual finding that the titled owner of record of the property was Michael A. Skirmont. The court further noted that the City maintained that Billups-Dryer's failure to secure an inspection of the property, obtain an occupancy permit, or pay the outstanding fines and water bills was the basis for the City not issuing her a transfer stamp. The court found that Billups-Dryer testified that she attempted to pay the fees and fines associated with the property but admitted that she had not yet satisfied any of these requirements at the time of the hearing.

¶ 93    The trial court found that the parties agreed that the property was not served by city water due to the outstanding bills. The City maintained that lack of water constituted a dangerous and unsafe condition, whereas Billups-Dryer contended that it did not.

¶ 94    The court concluded:

"Based on the testimony and evidence produced through the TRO hearing and subsequent trial, the Court finds that the property is abandoned according to the statutory requirements delineated in 65 ILCS 5/11-31-1(d). The uncontroverted

- 27 -

testimony and evidence conclude that the property tax bills and water bills are delinquent and / or outstanding for 2 or more years; the property is unoccupied by persons legally in possession; and the property contains a dangerous or unsafe building (*i.e.*, no water)."

¶ 95 Billups-Dryer has presented no evidence to demonstrate that the trial court improperly applied the law or made manifestly erroneous findings. Based on the trial court's findings, we find no error in the trial court's issuance of a judicial deed or determination that the property was abandoned under Section 11-31-1(d).

¶ 96                                III. CONCLUSION

¶ 97    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 98    Affirmed.